**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNIFORMED PROFESSIONAL FIRE FIGHTERS ASSOCIATION OF CONNECTICUT, et al., | Case No.: 3:24-cv-01101 (AWT) |
| Plaintiffs, | Judge Alvin W. Thompson |
| v. | Magistrate Judge Thomas O. Farrish |
| 3M COMPANY (F/K/A MINNESOTA MINING AND MANUFACTURING COMPANY), et al., | June 23, 2025 |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOVING DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' CORRECTED SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ........................................................................................................................ 1

SUMMARY OF ALLEGATIONS ............................................................................................... 4

LEGAL STANDARD.................................................................................................................... 9

ARGUMENT ............................................................................................................................... 10

I.   No plaintiff has established Article III standing. .............................................................. 10

    A.   The purchaser plaintiffs have not pleaded an injury-in-fact. ............................... 10

    B.   The purchaser plaintiffs lack standing to seek injunctive relief. ......................... 14

    C.   The union plaintiffs have not pleaded an injury-in-fact....................................... 15

    D.   The purchaser and union plaintiffs lack associational and third-party standing to bring CPLA claims on behalf of their members. ............................. 15

        1.   The complaint does not establish associational standing......................... 16

        2.   The complaint does not establish third-party standing. ........................... 16

    E.   The firefighter plaintiffs have not pleaded an injury-in-fact. .............................. 17

II.  The implied-warranty claims (first and second claims) fail as a matter of law. .............. 19

    A.   The CPLA's exclusive-remedy provision bars the implied-warranty claims. ..................................................................................................................... 19

    B.   The purchaser plaintiffs did not provide mandatory pre-suit notice for their implied-warranty claims. ....................................................................... 20

    C.   The purchaser plaintiffs have not alleged that any gear was unmerchantable. ..................................................................................................... 21

    D.   Connecticut law does not recognize an "implied warranty of usability."............ 22

    E.   Warranty claims for gear sold more than four years before the complaint was served are time-barred. ..................................................................... 23

III. The complaint does not allege a cognizable CUTPA violation (third claim). ................. 26

    A.   An alleged CUTPA claim cannot rest on group pleading..................................... 26

    B.   The purchaser plaintiffs cannot succeed on a fraud-based CUTPA theory. ........ 27

    C.   The CUTPA claim does not allege proximate cause. ........................................... 28

    D.   The CUTPA claim does not allege ascertainable loss. ........................................ 29

    E.   The CUTPA claim is time-barred as to any conduct that occurred more than three years before the date that the defendants were served. ...................... 29

IV.  No plaintiff has stated a cognizable CPLA violation (fourth claim). ............................. 31

**TABLE OF CONTENTS**
(continued)

**Page**

A.    The firefighter plaintiffs' allegations do not establish a cognizable injury under the CPLA. ........................................................................................ 32

B.    The purchaser and union plaintiffs have not alleged any recoverable injury under the CPLA. ........................................................................................ 34

C.    Under Connecticut law, medical monitoring is not a standalone claim. ............. 35

CONCLUSION ............................................................................................................. 35

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................9

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) ...........................................................................26, 27

*In re Beech-Nut Nutrition Co. Baby Food Litig.*,
    No. 1:21-CV-133, 2025 WL 862382 (N.D.N.Y. Mar. 19, 2025) ......................10, 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................9

*Berni v. Barilla S.p.A.*,
    964 F.3d 141 (2d Cir. 2020).....................................................................................14

*Bowerman v. United Illuminating*,
    No. X04-CV-940115436-S, 1998 WL 910271
    (Conn. Super. Ct. Dec. 15, 1998)..................................................................32, 33, 35

*Candeloro v. Allstate Ins. Co.*,
    No. 3:23-CV-00585, 2025 WL 918929 (D. Conn. Mar. 26, 2025) ..........................26

*Cenveo Corp. v. Domtar Corp.*,
    No. X08-FST-CV16-6030305-S, 2019 WL 4668165
    (Conn. Super. Ct. Aug. 14, 2019) ...........................................................................24

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)..................................................................................................14

*Collazo v. Nutribullet*,
    473 F. Supp. 3d 49 (D. Conn. 2020).........................................................................20

*ConfigAir LLC v. Kurz*,
    No. 3:17-CV-02026, 2019 WL 3458954 (D. Conn. July 31, 2019) ...................24, 25

*Conn. Off. of Prot. & Advoc. for Persons with Disabilities v. Connecticut*,
    706 F. Supp. 2d 266 (D. Conn. 2010).......................................................................16

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*,
    790 F.3d 411 (2d Cir. 2015).......................................................................................9

*Doe v. City of Stamford*,
  241 Conn. 692, 699 A.2d 52 (1997) ..................................................................33

*Dougan v. Sikorsky Aircraft Corp.*,
  No. X03-HHD-CV-126033069-S, 2017 WL 7806431
  (Conn. Super Ct. Mar. 28, 2017) ................................................................32, 35

*Dougan v. Sikorsky Aircraft Corp.*,
  337 Conn. 27, 251 A.3d 583 (2020) ...........................................................32, 33

*E. Point Sys., Inc. v. Steven Maxim, S2k, Inc.*,
  133 F. Supp. 3d 430 (D. Conn. 2015)................................................................27

*In re E.I. du Pont de Nemours & Co. Pers. Inj. Litig.*,
  87 F.4th 315 (6th Cir. 2023) .......................................................................13, 18

*Edwards v. Sequoia Fund, Inc.*,
  938 F.3d 8 (2d Cir. 2019)..................................................................................9

*Phelan ex rel. Est. of Phelan v. Daimler Chrysler Corp.*,
  323 F. Supp. 2d 335 (D. Conn. 2004)................................................................29

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024)........................................................................................15

*Ferry v. Mead Johnson & Co.*,
  514 F. Supp. 3d 418 (D. Conn. 2021)...........................................................20, 22

*Fichera v. Mine Hill Corp.*,
  207 Conn. 204, 541 A.2d 472 (1988) ................................................................30

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*,
  783 F.3d 395 (2d Cir. 2015).............................................................................28

*Flannery v. Singer Asset Fin. Co.*,
  312 Conn. 286, 94 A.3d 553 (2014) .............................................................30, 31

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*,
  No. 1:21-CV-269, 2022 WL 10197651 (E.D. Va. Oct. 17, 2022)....................10, 11

*Gerrity v. R.J. Reynolds Tobacco Co.*,
  263 Conn. 120, 818 A.2d 769 (2003) ................................................................19

*Hannan v. Rose*,
  No. 18-CV-9878, 2022 WL 21770560 (S.D.N.Y. Mar. 15, 2022)........................26

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977)........................................................................................16

*Indep. Ins. Serv. Corp. v. Hartford Life Ins. Co.*,
   472 F. Supp. 2d 183 (D. Conn. 2007)......................................................................29

*In re Pa. Baycol Third-Party Payor Litig.*,
   No. 1874 SEPT. Term 2001, 2005 WL 852135 (Pa. Com. Pl. Apr. 4, 2005) ........................23

*Jazlowiecki v. Gen. Motors, LLC*,
   No. HHD-CV20-6134497-S, 2021 WL 4240775
   (Conn. Super. Ct. Aug. 24, 2021) ..........................................................................20

*Kimca v. Sprout Foods, Inc.*,
   No. 21-CV-12977, 2022 WL 1213488 (D.N.J. Apr. 25, 2022) ...................................10, 11, 12

*Koronthaly v. L'Oreal USA, Inc.*,
   374 F. App'x 257 (3d Cir. 2010) ............................................................................18

*Lacewell v. Off. of Comptroller of Currency*,
   999 F.3d 130 (2d Cir. 2021).................................................................................13

*Lowell v. Lyft, Inc.*,
   352 F. Supp. 3d 248 (S.D.N.Y. 2018).......................................................................16

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..........................................................................................10

*Maced. Church v. Lancaster Hotel Ltd. P'ship*,
   498 F. Supp. 2d 494 (D. Conn. 2007).......................................................................16

*Marinos v. Poirot*,
   308 Conn. 706, 66 A.3d 860 (2013) ........................................................................29

*McCullough v. World Wrestling Ent., Inc.*,
   172 F. Supp. 3d 528 (D. Conn. 2016)...................................................................25, 35

*McGee v. S-L Snacks Nat'l*,
   982 F.3d 700 (9th Cir. 2020) ...............................................................................18

*Mental Hygiene Legal Serv. v. Cuomo*,
   609 F. App'x 693 (2d Cir. 2015) ............................................................................17

*Mountaindale Condo. Ass'n v. Zappone*,
   59 Conn. App. 311, 757 A.2d 608 (2000) ...................................................................25

*Murthy v. Missouri*,
   603 U.S. 43 (2024)...........................................................................................10

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016).................................................................................14

*Normandy v. Am. Med. Sys., Inc.*,
  340 Conn. 93, 262 A.3d 698 (2021) ...............................................................................24

*Poce v. O & G Indus.*,
  210 Conn. App. 82, 269 A.3d 899 (2022) ........................................................................32

*Powers v. Ohio*,
  499 U.S. 400 (1993).....................................................................................................15, 16

*Saedi v. Coterie Baby, Inc.*,
  No. 24-CV-3893, 2024 WL 4388401 (S.D.N.Y. Oct. 3, 2024)................................................18

*Slainte Invs. Ltd. P'ship v. Jeffrey*,
  142 F. Supp. 3d 239 (D. Conn. 2015)...............................................................................25

*Sommerville v. Union Carbide Corp.*,
  No. 2:19-CV-00878, 2024 WL 2139394 (S.D. W. Va. May 13, 2024)....................................17

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016).......................................................................................................10

*Standard Structural Steel Co. v. Bethlehem Steel Corp.*,
  597 F. Supp. 164 (D. Conn. 1984).....................................................................................21

*Stevenson Lumber Co.-Suffield, Inc. v. Chase Assocs.*,
  284 Conn. 205, 932 A.2d 401 (2007) ...............................................................................28

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014).......................................................................................................13

*Sylvan R. Shemitz Designs, Inc. v. Newark Corp.*,
  291 Conn. 224, 967 A.2d 1188 (2009) .........................................................................20, 34

*Tatum v. Oberg*,
  650 F. Supp. 2d 185 (D. Conn. 2009)................................................................................24

*TransUnion LLC v. Ramirez*,
  594 U.S. 414 (2021).....................................................................................................10, 17

*United Food & Com. Workers Union Loc. 751 v. Brown Grp.*,
  517 U.S. 544 (1996).......................................................................................................15

*Warth v. Seldin*,
  422 U.S. 490 (1975).......................................................................................................16

*Watts v. Chittenden*,
  301 Conn. 575, 22 A.3d 1214 (2011) ...............................................................................30

*Weiner v. Clinton*,
   No. HHD-CV04-4006045, 2006 WL 3200353
   (Conn. Super. Ct. Oct. 19, 2006) ........................................................................25

*Willow Springs Condo. Ass'n v. Seventh BRT Dev. Corp.*,
   245 Conn. 1, 717 A.2d 77 (1998) .......................................................................30

*Wilson v. Midway Games, Inc.*,
   198 F. Supp. 2d 167 (D. Conn. 2002)..................................................................31

*World Wrestling Ent., Inc. v. THQ, Inc.*,
   No. X05-CV06-5002512-S, 2008 WL 4307568
   (Conn. Super. Ct. Aug. 29, 2008*)* ................................................................24, 25

*Zeigler v. Sony Corp. of Am.*,
   48 Conn. Supp. 397, 849 A.2d 19 (Conn. Super. Ct. 2004) ...........................20, 21

*Zito v. United Techs. Corp.*,
   No. 3:15-CV-744, 2016 WL 2946157 (D. Conn. Mar. 11, 2016) ...................21, 22

## Statutes

Conn. Gen. Stat. § 42-110g.............................................................................28, 29

Conn. Gen. Stat. § 42-110g(f)................................................................................29

Conn. Gen. Stat. § 42a-2-314(2)............................................................................21

Conn. Gen. Stat. § 42a-2-314(3)............................................................................23

Conn. Gen. Stat. § 42a-2-607(3)(a) .......................................................................20

Conn. Gen. Stat. § 42a-2-725(1)............................................................................23

Conn. Gen. Stat. § 42a-2-725(2)............................................................................23

Conn. Gen. Stat. § 52-572m(a)..............................................................................19

Conn. Gen. Stat. § 52-572m(b)..............................................................................19

Conn. Gen. Stat. § 52-572m(d)..............................................................................34

Conn. Gen. Stat. § 52-572n(a)...............................................................................19

## Other Authorities

White & Summers, Uniform Commercial Code (2d ed. 1980) ................................. 21

1 White, Summers & Hillman, Uniform Commercial Code (6th ed.)...................21, 23

**INTRODUCTION**

The plaintiffs in this case are Connecticut fire departments, firefighters, and firefighter unions. In the third iteration of their complaint, they allege that Connecticut firefighters wear protective gear that contains PFAS, that those firefighters have been exposed to PFAS from the gear, and that the exposure has increased those firefighters' chances of future adverse health outcomes. Based on those allegations, the plaintiffs raise implied-warranty claims, product-liability claims, and a claim for violation of Connecticut's statute on unfair-and-deceptive trade practices.

The new complaint has the same failings as the prior two versions. It does not establish Article III standing, a prerequisite of subject-matter jurisdiction. It also fails to state a cognizable legal claim.

Article III standing requires each plaintiff to establish a concrete, particularized injury as to each alleged claim against each defendant. The plaintiffs have not satisfied this requirement:

- The fire departments that purchased protective gear (the "purchaser plaintiffs") allege that they did not get the benefit of their bargain. To establish an injury-in-fact under this theory, these plaintiffs must establish that the gear did not function as anticipated, or that they relied on a particular representation in making their purchases that went unfulfilled. There is no allegation that the gear failed to serve its function of protecting firefighters from the hazards of fighting fires. Nor do these plaintiffs make any factual allegations about their purchasing decisions—much less allegations about any statement by any defendant that any plaintiff considered as part of a purchasing decision.

1

- The firefighter union plaintiffs do not allege any injury other than having to divert resources to educating their members about the dangers of PFAS. The U.S. Supreme Court has rejected this resource-diversion theory of standing.

- The firefighter plaintiffs do not allege the manifestation of any symptom of any adverse health outcome. Instead, they allege that unidentified levels of PFAS accumulated in their blood and bodily tissue, which they say increases their risk of adverse health outcomes. They do not allege the magnitude, dose, frequency, or other measure of any exposure to any PFAS that can be attributed to any particular piece of gear or any defendant. Those allegations do not establish an injury-in-fact.

Because no plaintiff has established Article III standing, the Court lacks subject-matter jurisdiction. Rule 12(b)(1) therefore mandates the dismissal of all claims.

Even if the plaintiffs had established Article III standing, their claims still fail as a matter of law under Rule 12(b)(6).

First, the purchaser plaintiffs have failed to state a claim for breach of the implied warranty of merchantability (first claim) or the implied warranty of usability (second claim). Because those claims are based on allegedly defective products, the Connecticut Product Liability Act ("CPLA") provides these plaintiffs' exclusive remedy, meaning their independent warranty claims must be dismissed. Even if the CPLA permitted the claims, Connecticut law requires a plaintiff to provide written notice to a defendant before the plaintiff files a warranty claim, and the purchaser plaintiffs do not allege that they gave that notice. In addition, as to the merchantability claim, the purchaser plaintiffs' own allegations reveal that their gear is merchantable. Plaintiffs allege that only gear with PFAS was available in the marketplace, and a product that conforms to market standards is not unmerchantable as a matter of law. The

2

plaintiffs' usability claim also fails because Connecticut law does not recognize an implied warranty of usability.

Second, the purchaser plaintiffs fail to adequately allege a violation of the Connecticut Unfair Trade Practices Act ("CUTPA") (third claim). That claim impermissibly relies on group pleading, failing to identify specific conduct by any defendant that violates the statute. It also fails to satisfy Rule 9(b)'s particularity requirements, which a fraud-based CUTPA claim must satisfy. Further, the claim does not plead two required elements of a CUTPA claim: proximate cause and ascertainable loss. On proximate cause, the plaintiffs do not allege, as they must, whether or how any statement by any defendant affected any purchasing decision. The purchaser plaintiffs cannot establish ascertainable loss for CUTPA purposes for the same reasons that they do not establish injury-in-fact.

Finally, the CPLA claim (fourth claim) brought against all defendants fails as a matter of law for multiple reasons. Under Connecticut law, the firefighter plaintiffs' allegations of "subcellular injury" are not sufficient to allege an injury under the CPLA. The same is true for the union plaintiffs' alleged resource-diversion damages. The purchaser plaintiffs seek damages in the form of future replacement costs for their gear, but the CPLA allows damages only for replacement costs actually incurred, and, with one exception, the purchaser plaintiffs have not alleged that they have replaced any gear with gear that does not contain PFAS (even though they allege that "PFAS-free" gear is commercially available).

This putative class action asks the Court to impose wide-ranging remedies, including the certification of a nationwide class of purchasers and the establishment of a medical-monitoring program for all Connecticut firefighters. The gravity of these requests underscores the importance of carefully assessing whether, despite their hundreds of paragraphs of allegations,

the plaintiffs have established the threshold issue of subject-matter jurisdiction and pleaded any

legally sound claim. The plaintiffs have done neither.

**SUMMARY OF ALLEGATIONS[1]**

**I.    Allegations related to firefighter protective gear**

The plaintiffs' claims concern three types of firefighter gear: turnout gear, fire proximity

suits, and station wear. For ease of reference, this brief refers to this gear collectively as

"protective gear." The complaint alleges that this gear contains PFAS, including PTFE, PFOA,

and PFOS. (SAC ¶¶ 170-76, 190, 194, 363.)[2]

Turnout gear is specialized protective equipment made specifically for firefighters to

wear when fighting fires to protect them from the heat, fire, moisture, and chemicals they

encounter. (*Id.* ¶¶ 164-69.) Fire proximity suits serve similar purposes for firefighters engaged in

aircraft rescue and firefighting, a specific type of emergency-response firefighting. (*Id.* ¶¶ 187-

88.) Station wear refers to firefighters' daily garments that can be worn underneath turnout gear

for additional heat protection. (*Id.* ¶ 192.)

The complaint alleges that firefighters often use one set of turnout gear for several years,

but that each set must be replaced after ten years of use. (*Id.* ¶¶ 122, 359.) The purchaser

plaintiffs replace their turnout gear and station wear on a regular, rotating basis, with station wear

replaced annually. (*Id.* ¶¶ 122, 346-52.) The complaint does not allege that the purchaser

---

[1]    For purposes of this brief, defendants treat the complaint's allegations as true. Some of the allegations contain factual inaccuracies that the defendants will address, if necessary, in answers to the complaint or otherwise.

[2]    Citations to the Corrected Second Amended Complaint (ECF No. 215) are in the form (SAC ¶ ___). For readability, the brief's text refers to the Corrected Second Amended Complaint as "the complaint."

4

plaintiffs have replaced any turnout gear because they believe that the gear contains PFAS. It also does not allege that they have accelerated or will accelerate their gear-replacement schedule because of this belief. The complaint alleges that one purchaser plaintiff (the City of Stamford) has replaced its PFAS-containing station wear with cotton station wear, which is less expensive. (*Id.* ¶ 353.)

The complaint alleges that the defendants have varying roles in the supply chain for protective gear. For example, it alleges that seven defendants assemble, market, and sell gear from fabrics made by other manufacturers. (*See id.* ¶¶ 224-25, 229-42.) It alleges that the other defendants either supply PFAS used in the manufacturing process or supply "PFAS-containing materials" that are later assembled into protective gear. (*See id.* ¶¶ 225, 227, 230, 232, 234, 236, 239, 241, 248.)

## II.    Allegations of health effects from PFAS in protective gear

The complaint alleges in conclusory terms that the firefighter plaintiffs collectively have been exposed to "unsafe levels of PFAS" via dermal absorption, ingestion, and inhalation. (*See* SAC ¶¶ 366-67; *see also id.* ¶¶ 374, 454, 472, 490.) The complaint does not allege what amounts of any PFAS any firefighter was exposed to, or how that exposure to the unspecified quantity occurred. (*See id.* ¶¶ 366-67.)

Nor does the complaint contain any factual allegations regarding how exposure (in any form) to any particular PFAS in any quantity from any piece of protective gear worn by any firefighter has caused or will cause any specific health outcome. Instead, for each firefighter plaintiff, the complaint alleges (a) that the firefighter wore unspecified protective gear manufactured by one or more defendants and (b) that "as a result of" the firefighter's "exposure

to PFAS," the firefighter "has suffered subcellular injury that creates and increases the risk" that the firefighter "will develop cancers and other diseases." (*See id.* ¶¶ 32-43.)

In making those allegations, the complaint relies on two studies. The first, published in 2020, measured fluorine levels in new and used, out-of-service turnout gear assembled by certain defendants. (*See id.* ¶¶ 171-79.) It does not contain findings about how any individual's exposure to any PFAS in any turnout gear can be measured. (*See* ECF No. 112-1.) On this issue, the study says that "[f]urther studies are needed to deduce" whether and how much PFAS could "become bioavailable in blood via the different exposure pathways." (*See id.* at p. C.) The complaint also cites a second study that tested fluorine levels in four unused turnout garments. (*See* SAC ¶ 363 n.58.)[3] That study acknowledged that "it is not yet possible to determine if the turnout gear is a significant source of occupational exposure to PFASs for firefighters." (Ex. 1 at p. G.) The complaint makes no factual allegations about whether or how exposure to any PFAS from any type of protective gear worn by any firefighter plaintiff can be or has been measured. (*See* SAC ¶¶ 124-381.)

### III.     Allegations of statements attributed to defendants

The complaint alleges that "Defendants" in the aggregate have misrepresented "the safety of PFAS." (SAC ¶ 285.) It then quotes statements that it attributes to certain defendants. (*See id.* ¶¶ 286-306.) The statements are not uniform, and they were allegedly made at various times over a seven-year period—although the complaint does not attribute a specific date for most statements and does not attribute any date at all for many statements. (*See id.*) Some statements relate to the use of PFAS generally. (*See, e.g., id.* ¶¶ 286, 289, 298.) Other statements relate to the presence or absence of PFAS in turnout gear. (*See id.* ¶¶ 290, 293-96, 300.) Still other

---

3        A copy of this study is attached as Exhibit 1.

statements relate only to certain defendants' stated commitments to keeping firefighters safe. (*See id.* ¶¶ 291-92, 299-300, 302-06.)

The complaint does not allege that any purchaser plaintiff saw or considered these statements in selecting gear to buy.

## IV.    Allegations of the plaintiffs' purchase of protective gear

Only two plaintiffs allege that they bought protective gear: the City of Stamford and the Old Mystic Fire Department. (*See* SAC ¶¶ 29-31.) The Reliance Fire Company provides firefighting services to Old Mystic but does not purchase protective gear. (*See id.* ¶¶ 30-31.)

The complaint alleges only how many sets of turnout gear Stamford and Old Mystic own and how many sets of turnout gear and station wear they buy or issue annually. (*See id.* ¶¶ 346-51). It alleges nothing further about Stamford's or Old Mystic's purchase of any gear. It alleges in conclusory fashion that those plaintiffs' gear is unsuitable and unsafe, and that they would not have bought the turnout gear or station wear had they known that. (*See id.* ¶¶ 380, 406-07, 414-15, 428.) The complaint does not allege what alternative turnout gear Stamford or Old Mystic would have bought had they known the information. Nor could they, as the complaint alleges that, until recently, all turnout gear included PFAS. (*See id.* ¶¶ 164-76, 179, 321-25, 329.)

On this point, the complaint does not allege whether the purchaser plaintiffs have purchased any turnout gear that does not contain PFAS. (*See id.*) The complaint alleges that Stamford (but not Old Mystic) now purchases cotton station wear rather than station wear with PFAS-containing materials. (*See id.* ¶ 353.)

## V.    The plaintiffs' alleged injuries

The purchaser plaintiffs allege economic injuries. They claim that they have been harmed because they bought protective gear that they say is worthless, or worth less than what they paid

for it. (*See, e.g.*, SAC ¶¶ 407, 415, 423.) The purchaser plaintiffs further claim that they will incur economic injuries from replacing their existing gear and educating and training employees on how to reduce and mitigate the risks arising from their alleged exposure to PFAS in their protective gear. (*See, e.g. id.* ¶¶ 381, 443.)

The union plaintiffs claim a different economic injury—that they have diverted financial resources toward advocacy, education, and training efforts aimed at addressing the alleged dangers of PFAS in protective gear. (*See, e.g.*, *id.* ¶¶ 440, 443.)

The firefighter plaintiffs assert personal injuries. They allege that their exposure to PFAS in protective gear has caused them to suffer an undefined "subcellular injury" and increased their risk of future diseases. (*See, e.g.*, *id.* ¶¶ 32-43, 376.)

## VI.    The plaintiffs' claims and putative classes

The complaint raises four claims, with all claims asserted against all defendants.

The purchaser plaintiffs bring the first three claims: breach of the implied warranty of merchantability (first claim), breach of the implied warranty of "usability" (second claim), and an alleged violation of CUTPA (third claim). (*See* SAC ¶¶ 403-30.)

All plaintiffs bring the fourth claim under the CPLA. (*See id.* ¶¶ 431-506.)

The complaint seeks to certify three putative classes. The first is "[a]ll firefighters in the state of Connecticut who have worn or continue to wear PFAS-containing fire fighter PPE . . . that was manufactured, designed, or sold, in whole or in part, by any of the named Defendants during the Class Period" ("the Fire Fighter Class"). (*Id.* ¶ 383.) The second is "[a]ll persons or entities in the United States who have purchased or caused to be purchased PFAS-containing fire fighter PPE that was manufactured, designed, or sold, in whole or in part, by any of the named Defendants during the Class Period" ("the Nationwide Purchaser Class"). (*Id.*) The third is a

subclass of the second putative class, limited to persons or entities in Connecticut ("the Connecticut Purchaser Subclass"). (*Id.*) The complaint does not define the "Class Period."

This chart summarizes the claims, plaintiffs, and putative classes:

| Claim | Plaintiffs | Putative class |
|---|---|---|
| Breach of implied warranty of merchantability (first claim) | The purchaser plaintiffs | Nationwide Purchaser Class and Connecticut Purchaser Subclass |
| Breach of implied warranty of usability (second claim) | The purchaser plaintiffs | Nationwide Purchaser Class and Connecticut Purchaser Subclass |
| CUTPA (third claim) | The purchaser plaintiffs | Connecticut Purchaser Subclass |
| CPLA (fourth claim) | All plaintiffs | Connecticut Purchaser Subclass and Fire Fighter Class |

**LEGAL STANDARD**

The moving defendants seek dismissal under Rules 12(b)(1) and 12(b)(6). To survive a Rule 12(b)(1) motion for lack of subject-matter jurisdiction, the plaintiffs must allege facts that "affirmatively and plausibly suggest" that they have Article III standing. *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 417 (2d Cir. 2015) (internal quotation marks and citation omitted).

To survive a Rule 12(b)(6) motion, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility demands "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court need not accept as true "conclusory allegations or legal conclusions couched" as factual allegations. *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (cleaned up).

9

**ARGUMENT**

**I.      No plaintiff has established Article III standing.**

Article III standing is required for subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Each plaintiff must establish Article III standing for each claim, against each defendant, and for each type of relief sought. *See Murthy v. Missouri*, 603 U.S. 43, 61 (2024). This is true for both individual and class claims. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In the class context, every class member must have standing. *TransUnion LLC v. Ramirez*, 594 U.S. 414, 431 (2021).

To establish standing, a plaintiff must first show that it has suffered an injury-in-fact that is concrete and particularized, and that is actual or imminent. *Id.* at 423. No plaintiff here has met this requirement.

**A.      The purchaser plaintiffs have not pleaded an injury-in-fact.**

The purchaser plaintiffs' alleged injury is economic. They allege that if they had known that the gear they bought contained PFAS, they would not have bought it. (*See* SAC ¶¶ 380, 407, 415, 428.) These plaintiffs say that because the gear contains PFAS, it is unsafe and, therefore, worthless or worth less than what they paid for it. (*See id.* ¶ 423.)

Courts refer to this theory of alleged injury as the "benefit of the bargain theory." *See In re Beech-Nut Nutrition Co. Baby Food Litig.*, No. 1:21-CV-133, 2025 WL 862382, at *4 (N.D.N.Y. Mar. 19, 2025); *In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, No. 1:21-CV-269, 2022 WL 10197651, at *5 (E.D. Va. Oct. 17, 2022); *Kimca v. Sprout Foods, Inc.*, No. 21-CV-12977, 2022 WL 1213488, at *8 (D.N.J. Apr. 25, 2022). This theory of standing requires that, to show an injury-in-fact, plaintiffs must both (1) identify the representations that induced them to buy the product at issue and (2) allege that the product they bought did not meet its

intended purpose. *Beech-Nut*, 2025 WL 862382, at *4-5. The purchaser plaintiffs do not satisfy either requirement.

The recent *Beech-Nut* decision is instructive on how courts apply the benefit-of-the-bargain theory. There, the plaintiffs alleged that they paid for safe, healthy baby food, but that the food they bought had heavy metals that rendered the food unsafe and worth less than what they bargained for. *See id.* at *3. The complaint did not explain how the alleged presence of heavy metals in the food rendered false or misleading generic representations that the food was "organic," "natural," and "real." *Id.* at *5. The complaint also did not allege that the food did not meet its intended purpose of providing nourishment. *Id.* Because of these deficient allegations, the plaintiffs failed to establish injury-in-fact. *Id.* at *4-5.

In so holding, the *Beech-Nut* court applied teachings from decisions like *Gerber* and *Kimca*. In *Gerber*, as in *Beech-Nut*, the plaintiffs alleged that they bought baby-food products with undisclosed heavy metals that they claimed were harmful to children and could increase the risk of adverse health effects. *See* 2022 WL 10197651, at *1-2. For injury, the plaintiffs claimed that the products were unsafe and worth less than what they paid. *See id.* at *5. The *Gerber* court emphasized that under the benefit-of-the-bargain theory, there is no economic injury unless the complaint alleges that the product did not work as anticipated. *See id.* at *6-8. Because the complaint did not allege that the products failed to perform as intended or plead facts showing that the products were anything other than safe and healthy, the plaintiffs did not plead an injury-in-fact. *See id.* at *8.

*Kimca* followed the same pattern. The plaintiffs claimed that they bought baby-food products with dangerous levels of heavy metals, including arsenic, lead, and mercury, which the defendant allegedly did not disclose. *See Kimca*, 2022 WL 1213488, at *1. The plaintiffs

11

characterized the products as worthless. *See id.* at *9. Those allegations, the court concluded, were insufficient to establish economic injury under the benefit-of-the-bargain theory because the complaint did not establish that the products failed to fulfill their intended purpose and did not adequately allege that the levels of heavy metals in the products put the plaintiffs' children at risk of harm. *See id.*

The purchaser plaintiffs' allegations suffer from the same two fatal flaws as the complaints in these cases. Like the plaintiffs in *Beech-Nut*, *Gerber*, and *Kimca*, the purchaser plaintiffs allege that they bought products (protective gear) that they claim can increase the risk of adverse health effects because the products contain certain chemicals. Also like those plaintiffs, the purchaser plaintiffs do not allege that the protective gear they bought did not perform as intended: "to protect [firefighters] from heat, flames, and impact," (SAC ¶ 164.) Nor do the purchaser plaintiffs identify any statement by any defendant on which they relied when they bought the gear. Indeed, the complaint does not make any factual allegations about any purchaser plaintiff's decisions to buy any protective gear. Without these allegations, the purchaser plaintiffs have not pleaded injury-in-fact under the benefit-of-the-bargain theory of standing.

The complaint also does not adequately allege that PFAS "exposure" through use of the protective gear puts firefighters—those who use the product—at risk of harm. As detailed above, *see supra* pp. 2, 5-6, the complaint contains no factual allegations about any dose, quantity, period, or method of exposure by any firefighters to any PFAS from any particular gear attributable to any particular defendant. The plaintiffs further concede that virtually everyone in the United States has PFAS in their bloodstream. (*See id.* ¶ 253(d).) As one court aptly explained, "interaction with materials containing PFAS is a fact of daily life" for Americans, given that

12

PFAS are "part of a family of thousands of chemicals whose usage is nearly ubiquitous in modern life." *In re E.I. du Pont de Nemours & Co. Pers. Inj. Litig.*, 87 F.4th 315, 318 (6th Cir. 2023).

The complaint likewise lacks any factual allegations that establish any particular health effects from any undescribed, unmeasurable exposures. The complaint's sweeping, generalized allegations about PFAS—and its citations to studies about PFAS in drinking water (*see id.* ¶ 177), a wholly different factual context—cannot cure these deficiencies. As in *Beech-Nut*, *Gerber*, and *Kimca*, the absence of allegations that the particular amount of PFAS in a particular product manufactured or sold by a particular defendant has created an adverse health effect renders the purchaser plaintiffs' theory speculative and insufficient to establish injury-in-fact.

Nor can the purchaser plaintiffs establish injury-in-fact through their allegations that they will need to replace their protective gear at some future time. (*See id.* ¶ 381.) An allegation of future harm is sufficient only if it is "certainly impending" or if "there is a substantial risk that the harm will occur." *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotations omitted)).

The complaint lacks allegations that meet these standards. Instead, it alleges that the purchaser plaintiffs will replace turnout gear on a pre-established schedule. (*See id.* ¶¶ 346-52.) The purchaser plaintiffs do not allege that they will accelerate the replacement schedule because the gear their firefighters used—and continue to use—contains PFAS, despite alleging that "PFAS-free" gear is now available. (*See id.* ¶ 329.) One purchaser plaintiff alleges that it now purchases cotton station wear rather than station wear with PFAS-containing materials, but that plaintiff alleges that cotton station wear is less expensive. (*Id.* ¶ 353.) There is thus no impending

13

or substantial risk of future economic harm based on replacing the protective gear in the ordinary course.

Because the purchaser plaintiffs have not pleaded injury-in-fact, their claims fail for lack of subject-matter jurisdiction.

**B.     The purchaser plaintiffs lack standing to seek injunctive relief.**

In addition to damages, the purchaser plaintiffs seek injunctive relief that calls for each defendant to "correct its unfair and deceptive practices."[4] (*See* SAC at 111.)

To establish standing for prospective injunctive relief, a party must show that it is likely to suffer similar harm in the future, giving rise to a "real or immediate threat" of injury. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)). "[P]ast purchasers of a product . . . are not likely to encounter future harm of the kind that makes injunctive relief appropriate" because they "are not bound to purchase a product again." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020).

This principle applies here. The complaint alleges that "PFAS-free" protective gear is now available to buy. (*See id.* ¶¶ 320, 329.) These allegations defeat the complaint's suggestion that the purchaser plaintiffs need any form of injunctive relief. Either the purchaser plaintiffs can now replace their gear with available alternatives that omit the product about which they complain—in which case they are not entitled to injunctive relief—or the purchaser plaintiffs can continue to buy protective gear with PFAS, in which case they cannot claim that their past purchases of this gear caused any economic injury.

---

[4]     Because only the firefighter plaintiffs seek medical monitoring under the CPLA, the moving defendants read the request for medical testing and monitoring as relevant to those plaintiffs only. (*See* SAC ¶¶ 490-99.)

14

**C.      The union plaintiffs have not pleaded an injury-in-fact.**

The union plaintiffs' only alleged injury is that they have directed resources toward researching and educating their members about the alleged harms of PFAS. (*See, e.g.*, SAC ¶¶ 9, 17-28, 440, 442, 444.)

The U.S. Supreme Court, however, has rejected that theory of injury-in-fact. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024). An organization cannot manufacture standing by diverting resources in response to a defendant's actions. *Id.* That theory, if permissible, "would mean that all the organizations in America would have standing to challenge almost every [] policy that they dislike, provided they spend a single dollar opposing those policies." *Id.* at 395.

The union plaintiffs' allegations of resource diversion are therefore insufficient to show injury-in-fact, and their only claim (fourth claim) fails for lack of subject-matter jurisdiction.

**D.      The purchaser and union plaintiffs lack associational and third-party standing to bring CPLA claims on behalf of their members.**

In addition to lacking standing to pursue their own claims, the purchaser and union plaintiffs lack standing to sue for firefighters' alleged injuries.

To sue on behalf of firefighters, the purchaser and union plaintiffs must establish either associational or third-party standing—limited exceptions to the general rule that a party cannot seek relief based on others' legal rights. *See United Food & Com. Workers Union Loc. 751 v. Brown Grp.*, 517 U.S. 544, 552 (1996); *Powers v. Ohio*, 499 U.S. 400, 410-13 (1993).

Neither group of plaintiffs has done so here.

1.    *The complaint does not establish associational standing.*

For associational standing, an organization must show, among other things, that its individual members are not required to participate in the lawsuit. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also Conn. Off. of Prot. & Advoc. for Persons with Disabilities v. Connecticut*, 706 F. Supp. 2d 266, 279 (D. Conn. 2010).

Neither the purchaser plaintiffs nor the union plaintiffs satisfy this requirement. A claim for compensatory damages "requires the participation of a group's individual members." *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 257 (S.D.N.Y. 2018); *see also Warth v. Seldin*, 422 U.S. 490, 516 (1975); *Maced. Church v. Lancaster Hotel Ltd. P'ship*, 498 F. Supp. 2d 494, 501 (D. Conn. 2007). Claims for compensatory damages are not common to nor shared equally by all members of an organization; they are "peculiar" to each member. *Warth*, 422 U.S. at 515. The existence of an injury and the extent of that injury require individualized proof. *Id.* at 515-16.

To the extent that the purchaser and union plaintiffs seek damages for injuries suffered by their members, volunteers, and employees, they lack standing to do so because those claims require the participation of individual members. The purchaser and union plaintiffs therefore lack associational standing to bring their CPLA claims on behalf of firefighters.

2.    *The complaint does not establish third-party standing.*

To establish third-party standing, a plaintiff must satisfy three requirements: (1) the plaintiff has an injury-in-fact, (2) the plaintiff has a "close relation" to the third party on whose behalf it brings a claim, and (3) there is some hindrance to the third party's ability to protect its interests. *Powers*, 499 U.S. at 410-11.

The union and purchaser plaintiffs do not meet the first or third requirements. As shown above, the union and purchaser plaintiffs have not alleged that they suffered any injury-in-fact.

16

*See supra* pp. 10-15. The union and purchaser plaintiffs also do not allege any hindrance that prevents their members or other firefighters from bringing their own claims. Indeed, no such hindrance exists. Individual Connecticut firefighters have filed complaints in the multi-district litigation in the District of South Carolina that allege personal injury from PFAS in turnout gear. *See* ECF Nos. 112-3 & 112-4. Individual Connecticut firefighters are also bringing their own personal-injury claims in this case.

The union and purchaser plaintiffs' CPLA claims therefore fail to establish subject-matter jurisdiction to the extent that they seek relief on behalf of third parties. *See Mental Hygiene Legal Serv. v. Cuomo*, 609 F. App'x 693, 695 (2d Cir. 2015) (summary order) (defendant lacked third-party standing where there was "scant evidence" that its constituents' ability to bring lawsuits was hindered, and constituents had already filed "numerous lawsuits . . . raising the same constitutional claims at issue").

### E.    The firefighter plaintiffs have not pleaded an injury-in-fact.

The firefighter plaintiffs allege that exposure to PFAS in protective gear has caused PFAS to accumulate in their blood and tissue, giving rise to increased risk of future health conditions. (*See* SAC ¶¶ 32-43, 375-76.) They seek both compensatory damages and injunctive relief based on this risk of future harm. (*Id.* ¶¶ 442, 455, 472, 491, Prayer for Relief.) They do not allege, however, that they are suffering from any physical manifestation of any symptom or disease arising from alleged exposure to PFAS in protective gear. They also do not allege the level of PFAS exposure they faced because of the gear. The absence of these allegations forecloses Article III standing.

The risk of future harm does not by itself constitute concrete harm sufficient to confer Article III standing for a damages claim. *TransUnion*, 594 U.S. at 436; *see also Sommerville v.*

17

*Union Carbide Corp.*, No. 2:19-CV-00878, 2024 WL 2139394, at \*6-8 (S.D. W. Va. May 13, 2024) (no injury-in-fact where the plaintiff could not "demonstrate the level of exposure" to a known carcinogen and cited only a "speculative increase in risk"). A risk of future harm is all that the firefighter plaintiffs have alleged here. They therefore lack standing for their damages claim.

A risk of future harm without the present manifestation of any symptoms arising from exposure to a toxin at levels sufficient to create health complications also does not adequately plead injury-in-fact for purposes of an injunctive relief claim. *See, e.g.*, *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 709-10 (9th Cir. 2020) (no injury-in-fact where exposure to trans fat in popcorn at quantities alleged did not put plaintiff "at substantial risk of disease"); *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010) (no injury-in-fact where plaintiff did not allege any adverse health consequences from trace amounts of lead in lipstick). The firefighter plaintiffs have not alleged the manifestation of any symptoms arising from their alleged PFAS exposure through protective gear. They also have not alleged their exposure to PFAS in protective gear in any particular amount, much less an amount sufficient to create health complications now or in the future. The firefighter plaintiffs therefore lack standing for their injunctive relief claim.

The complaint's conclusory allegation that there is no safe level for exposure to certain PFAS (*see id.* ¶ 147) does not cure the firefighter plaintiffs' deficient allegations or establish injury-in-fact. PFAS is "nearly ubiquitous in modern life" and every person in the United States has been exposed to it. *See In re du Pont*, 87 F.4th at 318-19 (noting that PFOA is "present in the blood of every person residing in the United States"); *Saedi v. Coterie Baby, Inc.*, No. 24-CV-3893, 2024 WL 4388401, at \*1 (S.D.N.Y. Oct. 3, 2024) (noting "almost all human beings have

18

PFAS in their blood"). The firefighter plaintiffs' general allegations of "elevated blood levels of PFAS" (*id.* ¶ 180), without reference to their level of exposure or any manifestation of injury beyond a speculative increased risk of future harm, is not sufficient to show injury-in-fact.

\*      \*      \*

Because no plaintiff has established Article III standing, the complaint fails to establish subject-matter jurisdiction. That failure calls for the complaint's dismissal under Rule 12(b)(1).

## II.    The implied-warranty claims (first and second claims) fail as a matter of law.

The complaint's first two claims, which allege breaches of implied warranties, are brought by the purchaser plaintiffs. Those claims merit dismissal for multiple reasons.

First, the CPLA's exclusive-remedy provision bars the claims. Second, the purchaser plaintiffs did not provide any defendant with statutorily required notice. Third, for the merchantability claim (first claim), the complaint does not allege that the purchased gear was unmerchantable. Fourth, Connecticut law does not recognize an "implied warranty of usability" (second claim). In addition, any claims for gear sold more than four years prior to service of the complaint are time-barred.

### A.    The CPLA's exclusive-remedy provision bars the implied-warranty claims.

When a party alleges damages from an allegedly defective product, the CPLA provides the exclusive remedies under Connecticut law. *See* Conn. Gen. Stat. § 52-572n(a); *Gerrity v. R.J. Reynolds Tobacco Co.*, 263 Conn. 120, 125-26, 818 A.2d 769, 773 (2003). The statutory language is unambiguous: A claim under the CPLA "shall be in lieu of all other claims against product sellers," including manufacturers. Conn. Gen. Stat. § 52-572n(a); *id.* § 52-572m(a). This includes claims for "breach of warranty, express or implied." *Id.* § 52-572m(b).

As a result, when a party brings a warranty claim based on an allegedly defective

19

product, the claim fails as a matter of law. *See, e.g.*, *Collazo v. Nutribullet*, 473 F. Supp. 3d 49, 52-53 (D. Conn. 2020); *Jazlowiecki v. Gen. Motors, LLC*, No. HHD-CV20-6134497-S, 2021 WL 4240775, at *2 (Conn. Super. Ct. Aug. 24, 2021).

In *Collazo*, for example, the plaintiff brought warranty claims after suffering injuries allegedly caused by a food processor. 473 F. Supp. 3d at 50. Because those claims sought damages for harm caused by a product, the court dismissed them under the CPLA's exclusive-remedy provision. *See id.* Similarly, in *Jazlowiecki*, the court dismissed warranty claims that sought damages for an allegedly defective transmission and engine because the CPLA bars those claims. *See* 2021 WL 4240775, at *1-2.

Here, the CPLA's exclusive-remedy provision applies to the purchaser plaintiffs' warranty claims. Those claims allege that the gear that the purchaser plaintiffs bought is "unsuitable and unsafe." (SAC ¶ 406.) These plaintiffs also allege that they will need to replace the gear. (*See id.* ¶ 409.) Product-replacement costs (if actually incurred) are recoverable damages under the CPLA. *Sylvan R. Shemitz Designs, Inc. v. Newark Corp.*, 291 Conn. 224, 237-38, 967 A.2d 1188, 1198 (2009). The CPLA's exclusive-remedy provision therefore forecloses the purchaser plaintiffs' attempted warranty claims.

### B.    The purchaser plaintiffs did not provide mandatory pre-suit notice for their implied-warranty claims.

Under Connecticut's U.C.C., a buyer is "barred from any remedy" for an alleged warranty breach unless the buyer has first provided notice of the breach. Conn. Gen. Stat. § 42a-2-607(3)(a). A claim that does not allege the provision of this notice fails as a matter of law. *Ferry v. Mead Johnson & Co.*, 514 F. Supp. 3d 418, 452 (D. Conn. 2021); *Zeigler v. Sony Corp. of Am.*, 48 Conn. Supp. 397, 403, 849 A.2d 19, 24 (Conn. Super. Ct. 2004). As the leading U.C.C. treatise explains, a manufacturer that could be liable for a buyer's loss should receive the

20

protections afforded by pre-suit notice. *See* 1 White, Summers & Hillman, Uniform Commercial Code § 12:20 (6th ed.) (citing cases applying this principle).

The complaint here does not allege that the purchaser plaintiffs provided any defendant with any notice of any warranty breach. The purchaser plaintiffs instead argued in their opposition to defendants' motion to dismiss the prior complaint that the notice requirement applies only to claims against the person or entity that directly sold the allegedly defective product to the plaintiff—and not to the product's manufacturer or component suppliers. (*See* ECF No. 170 at 58-59.) In *Zeigler*, however, the court rejected this argument. *See* 48 Conn. Supp. at 402-03, 849 A.2d at 24. The court called the argument "unpersuasive" because of the clear, mandatory statutory text. *See id.*

The warranty claims therefore fail because of an absence of pre-suit notice.

## C. The purchaser plaintiffs have not alleged that any gear was unmerchantable.

The first claim (for breach of the implied warranty of merchantability) fails as a matter of law for a third, independent reason. It does not plausibly allege that any protective gear was not merchantable or fit for its intended use. *See* Conn. Gen. Stat. § 42a-2-314(2).

A product that conforms to the quality of other brands on the market ordinarily is merchantable. *Standard Structural Steel Co. v. Bethlehem Steel Corp.*, 597 F. Supp. 164, 188 (D. Conn. 1984) (citing White & Summers, Uniform Commercial Code at 353 (2d ed. 1980)). For this reason, when all products on the market have the same alleged defect, the products are not unmerchantable as a matter of law. *Zito v. United Techs. Corp.*, No. 3:15-CV-744, 2016 WL 2946157, at *8 (D. Conn. Mar. 11, 2016), *aff'd*, 673 F. App'x 117 (2d Cir. 2016).

This Court's ruling in *Zito* is instructive. The plaintiff there alleged that technology incorporated into most smoke alarms in the United States was defective but did not dispute that

21

the smoke alarms met the requirements of the relevant national testing authorities. *Id.* This Court thus concluded that the defendants' smoke alarms were merchantable as a matter of law and granted the defendants' motion to dismiss for failure to state a claim. *Id.*

Similarly, in *Ferry*, the court dismissed under Rule 12(b)(6) a merchantability claim that was based on the presence of cow milk in infant formula because the formula was not a market outlier: Every infant formula on the market included cow milk. *See* 514 F. Supp. 3d at 452. The defendant's formula therefore could not be unmerchantable as a matter of law. *Id.*

Like the complaints in these cases, the complaint here alleges uniformity among products in the relevant market. The complaint highlights this uniformity, alleging that, until recently, all protective gear had the same defective feature (PFAS). (*See* SAC ¶¶ 170-79, 361-62.) The complaint also includes an image of a label from one piece of gear that certifies that the gear complies with the relevant industry standard, NFPA 1971. (*See id.* ¶ 308.) The plaintiffs do not allege that their gear strayed from that national standard. Nor does the complaint allege that the gear failed to achieve its purpose of protecting firefighters "from heat, flames, and impact" (*id.* ¶ 164) in the performance of their firefighting duties.

A cognizable merchantability claim requires a showing that the purchased product departs from market standards. The complaint here alleges the opposite. This is another, independent reason that the merchantability claim fails as a matter of law.

## D.      Connecticut law does not recognize an "implied warranty of usability."

The complaint's second claim is styled, "Breach of the Implied Warranty of Usability." (*See* SAC at 90.) The claim alleges that an implied warranty of usability is codified in section 2-314(3) of Connecticut's U.C.C. (*See id.* ¶¶ 411-13.)

This statute, however, does not refer to an implied warranty of usability. It states only

22

that "other implied warranties may arise from course of dealing or usage of trade." Conn. Gen. Stat. § 42a-2-314(3). Likewise, the leading U.C.C. treatise does not refer to a warranty of "usability" in its discussion of implied warranties. *See* 1 White, Summers & Hillman, Uniform Commercial Code § 10:1-49 (6th ed.). The moving defendants are not aware of any decision that, when applying Connecticut law, has recognized an implied warranty of "usability" under section 2-314 or any other U.C.C. provision.

The purchaser plaintiffs have previously cited an unpublished decision by a Pennsylvania trial court to support their usability claim. (*See* ECF No. 170 at 58.) But that decision merely mentions in passing that the plaintiffs in that case sought to bring a "usability" claim. *See In re Pa. Baycol Third-Party Payor Litig.*, No. 1874 SEPT.TERM 2001, 2005 WL 852135, at *5 (Pa. Com. Pl. Apr. 4, 2005). It does not consider, let alone endorse, a claim for breach of any implied warranty of "usability." *See id.*

Because section 2-314(3) does not create an implied warranty of usability, and no court applying Connecticut law has recognized that warranty, the second claim fails as a matter of law.

### E.  Warranty claims for gear sold more than four years before the complaint was served are time-barred.

An implied-warranty claim has a four-year limitations period. Conn. Gen. Stat. § 42a-2-725(1). The claim accrues at the time of breach, which is "when tender of delivery is made." *Id.* § 42a-2-725(2). Unless a warranty explicitly extends to future performance, which the plaintiffs here do not allege, the limitations period is not tolled until discovery of the breach. *Id.*

Under these standards, the warranty claims here are timely only if the purchaser plaintiffs served the claims within four years of tender of delivery of the relevant gear. Warranty claims about gear tendered more than four years before the purchaser plaintiffs served the original

complaint are time-barred. *See Cenveo Corp. v. Domtar Corp.*, No. X08-FST-CV16-6030305-S, 2019 WL 4668165, at *7 (Conn. Super. Ct. Aug. 14, 2019).

The purchaser plaintiffs try to sidestep this limitations period by alleging tolling based on fraudulent concealment. (*See* SAC ¶¶ 392-402.) That type of tolling must satisfy the particularity demands of Rule 9(b). *ConfigAir LLC v. Kurz*, No. 3:17-CV-02026, 2019 WL 3458954, at *19 (D. Conn. July 31, 2019). To do so, the complaint must plead facts that show that each defendant (1) had actual awareness of the facts necessary to establish the claim, (2) intentionally concealed those facts, and (3) concealed the facts for the purpose of delaying the filing of a cause of action. *See id.*; *see also Normandy v. Am. Med. Sys., Inc.*, 340 Conn. 93, 114, 262 A.3d 698, 711-12 (2021) (applying these requirements in context of warranty claims). The purchaser plaintiffs must identify the statements or omissions they contend are fraudulent, the speaker, where and when the statements or omissions were made, and explain why the statements are fraudulent. *See Tatum v. Oberg*, 650 F. Supp. 2d 185, 191 (D. Conn. 2009).

The third element listed above is particularly important. It requires the alleged concealment to have been "directed to the very point of" delaying the plaintiffs in filing their cause of action. *World Wrestling Ent., Inc. v. THQ, Inc.*, No. X05-CV06-5002512-S, 2008 WL 4307568, at *11 (Conn. Super. Ct. Aug. 29, 2008*).* To satisfy this requirement, the alleged concealment underlying the plaintiffs' claims must be *different from* any alleged concealment intended to delay the lawsuit. *Id.*; *ConfigAir*, 2019 WL 3458954, at *19.

The complaint here lacks any factual allegations on this point. It does not differentiate between concealment to support the tolling allegations and concealment to support an underlying claim. (*Compare* SAC ¶¶ 400-01, *with id.* ¶¶ 422, 425, 466-67.) In *World Wrestling* and *ConfigAir*, the plaintiffs did not establish grounds for tolling because their allegations of

24

concealment concerned the initial underlying alleged fraud—and not independent acts of concealment for the purpose of delaying a lawsuit. *World Wrestling*, 2008 WL 4307568, at *11; *ConfigAir*, 2019 WL 3458954, at *19. The purchaser plaintiffs' tolling allegations are legally insufficient for the same reason.

In addition, the tolling allegations here do not identify with the requisite particularity where, when, or by whom any alleged statement attributable to any defendant was made. Sufficient particularity requires allegations of specific statements made by a particular defendant to a plaintiff, such as in letters, by telephone, or in-person conversations. *See, e.g.*, *Slainte Invs. Ltd. P'ship v. Jeffrey*, 142 F. Supp. 3d 239, 261-62 (D. Conn. 2015). Where statements to the broader public have been found sufficient to support concealment tolling, those statements have been attributed to a defendant and directed at concealing facts core to the underlying claim. *See McCullough v. World Wrestling Ent., Inc.*, 172 F. Supp. 3d 528, 555-56 (D. Conn. 2016). Here, in contrast, the plaintiffs resort to group pleading, pointing to broad, public statements made by various defendants, many of which do not relate to PFAS or any attendant health risks. (*See id.* ¶¶ 285-306.) The plaintiffs do not identify any statements made to them, when those statements were made, by whom those statements were made, or how those statements allegedly were fraudulent with the level of specificity required by Rule 9(b).

Finally, a complaint that alleges tolling by fraud must plausibly allege that the plaintiffs exercised "all due diligence." *World Wrestling*, 2008 WL 4307568, at *11-12; *Mountaindale Condo. Ass'n v. Zappone*, 59 Conn. App. 311, 322, 757 A.2d 608, 615-16 (2000), *cert. denied*, 254 Conn. 947, 762 A.2d 903 (2000). Once the plaintiffs know the facts underlying their claim, the limitations period starts to run. *Weiner v. Clinton*, No. HHD-CV04-4006045, 2006 WL 3200353, at *7 (Conn. Super. Ct. Oct. 19, 2006).

Here, the complaint alleges that the 2020 Peaslee study publicly disclosed the existence of PFAS in turnout gear. (*See id.* ¶¶ 171, 179.) The complaint further alleges that "the composition of turnout gear has been scrutinized by researchers" and others in "recent years." (*Id.* ¶ 186). The complaint does not allege that any plaintiff exercised due diligence to determine whether a claim existed against any defendant after the publication of the Peaslee study or similar resources discussing the presence of PFAS in protective gear.

For this additional reason, the plaintiffs' claims cannot be tolled based on fraudulent concealment. The plaintiffs' implied-warranty claims about protective gear tendered more than four years before the purchaser plaintiffs served the complaint are time-barred.

### III.   The complaint does not allege a cognizable CUTPA violation (third claim).

#### A.   An alleged CUTPA claim cannot rest on group pleading.

The purchaser plaintiffs are the only plaintiffs who have alleged a violation of CUTPA, the Connecticut Unfair Trade Practices Act. (*See* SAC ¶¶ 418-30.) In that claim, the purchaser plaintiffs allege that "[e]ach Defendant's deceptive and/or unfair actions in the conduct of trade and/or commerce within Connecticut" caused the purchaser plaintiffs harm through the purchase of protective gear with PFAS. (*Id.* ¶ 421.)

In doing so, the claim does not specify which action(s) by which defendant(s) is or are unfair or deceptive. That group-pleading approach violates the controlling pleading standards. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order)[5]; *Candeloro v. Allstate Ins. Co.*, No. 3:23-CV-00585, 2025 WL 918929, at *5 (D. Conn. Mar. 26, 2025).

---

[5]   Although *Atuahene* predates *Twombly* and *Iqbal*, courts in this Circuit hold that a complaint that is insufficient under *Atuahene* fails to meet the standards set forth in *Twombly* and *Iqbal*. *See, e.g.*, *Hannan v. Rose*, No. 18-CV-9878, 2022 WL 21770560, at *19 (S.D.N.Y. Mar. 15, 2022).

Under these standards, a complaint fails to state a claim if it lumps "defendants together in each claim and provid[es] no factual basis to distinguish their conduct." *Atuahene*, 10 F. App'x at 34. These standards ensure that each defendant has fair notice of the factual basis of the CUTPA claim against that defendant. *Id.*

The purchaser plaintiffs' CUTPA allegations do not provide that notice. Indeed, the CUTPA claim does not distinguish among the defendants in any way:

- The claim refers to "unfair conduct" by "Defendants" made "in connection with [the] marketing and sale" of gear, but it does not say what statement(s) any defendant(s) made to any plaintiff. (*See id.* ¶ 423.)

- With no specifics, the claim charges "Defendants" collectively with a failure to "mitigate." (*Id.* ¶ 425.)

- The claim points to "public statements" by "Defendants" that assured the purchaser plaintiffs that the protective gear was safe, but the claim does not single out any statement by any defendant, let alone allege how any purchaser plaintiff was assured in any way by any defendant's statement. (*See id.*)

As these allegations show, the purchaser plaintiffs' CUTPA claim does not even try to identify specific conduct by specific defendants. This textbook example of group pleading is legally insufficient, and the claim merits dismissal under Rule 12(b)(6) on this basis.

**B.    The purchaser plaintiffs cannot succeed on a fraud-based CUTPA theory.**

The complaint alleges that all defendants knew of the dangers of PFAS but made public statements to the contrary. (*See* SAC ¶¶ 251-306.) A CUTPA claim based on fraud allegations, however, must satisfy the particularity requirements of Rule 9(b). *See, e.g.*, *E. Point Sys., Inc. v. Steven Maxim, S2k, Inc.*, 133 F. Supp. 3d 430, 440 (D. Conn. 2015). Rule 9(b) requires the claim

27

to plead the specific statement at issue, the speaker's identity, the time and place of the statement, and why it was fraudulent. *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 403 (2d Cir. 2015).

The CUTPA claim lacks these allegations. The claim itself does not refer to any statement by any defendant. (*See id.* ¶¶ 421-30.) Earlier, the complaint refers to statements on certain defendants' websites, to "public advertisements" of certain defendants with no details, and to non-specific statements made at a non-specified time in a calendar year. (*See id.* ¶¶ 285-306.) The CUTPA claim does not say why any of these statements is fraudulent. Many statements do not concern protective gear. (*See id.* ¶¶ 286-89, 294, 298.) Others are highly generalized statements about safety that plainly relate to the gear's ability to protect firefighters from firefighting hazards. (*See id.* ¶¶ 301-06.) These generalized statements are not sufficient to state a claim under CUTPA based on fraudulent conduct.

Because the CUTPA claim does not satisfy Rule 9(b), the claim merits dismissal.

### C.     The CUTPA claim does not allege proximate cause.

The CUTPA claim also fails because it does not plausibly allege that any alleged loss was "a result of" of any prohibited conduct. *See* Conn. Gen. Stat. § 42-110g. This statutory text requires the purchaser plaintiffs to plead that each individual defendant's allegedly prohibited conduct was the proximate cause of those plaintiffs' alleged injuries. *Stevenson Lumber Co.-Suffield, Inc. v. Chase Assocs.*, 284 Conn. 205, 214, 932 A.2d 401, 406-07 (2007).

Here, the CUTPA claim alleges that "Defendants" collectively made public statements "assuring" the purchaser plaintiffs that protective gear was safe. (SAC ¶ 425.) The complaint, however, alleges no facts to support this conclusory allegation. More specifically, the complaint does not allege any facts that connect any statement or other conduct by any defendant with the

28

purchasing decision of any purchaser plaintiff—let alone facts concerning where or when any statement was made, or who read or listened to it. (*See id.* ¶¶ 421-30.) The complaint also does not allege that any plaintiff considered any statement in making any purchasing decision.

The absence of these factual allegations means that the CUTPA claim fails to establish proximate cause. This is another independent basis to dismiss the CUTPA claim under Rule 12(b)(6).

### D.     The CUTPA claim does not allege ascertainable loss.

The CUTPA claim has a fourth fatal deficiency. It does not allege that the purchaser plaintiffs have suffered an "ascertainable loss of money or property." Conn. Gen. Stat. § 42-110g. Under CUTPA, "an ascertainable loss is a deprivation, detriment or injury that is capable of being discovered, observed or established." *Marinos v. Poirot*, 308 Conn. 706, 714, 66 A.3d 860, 866 (2013) (cleaned up). For the same reasons that the purchaser plaintiffs have not pleaded an injury-in-fact, *see supra* pp. 10-15, they have not alleged an ascertainable loss for CUTPA purposes.

### E.     The CUTPA claim is time-barred as to any conduct that occurred more than three years before the date that the defendants were served.

CUTPA claims "may not be brought more than three years after the occurrence of a violation." Conn. Gen. Stat. § 42-110g(f). This statute of limitations is "triggered upon the occurrence of the alleged violation, not the discovery of the alleged practice." *Indep. Ins. Serv. Corp. v. Hartford Life Ins. Co.*, 472 F. Supp. 2d 183, 190 (D. Conn. 2007). The limitations period is not tolled until the plaintiffs' discovery of the underlying alleged fraud or deception or by allegations about the purported fraud or concealment that forms the basis of the underlying CUTPA claim. *Phelan ex rel. Est. of Phelan v. Daimler Chrysler Corp.*, 323 F. Supp. 2d 335,

341-42 (D. Conn. 2004); *Willow Springs Condo. Ass'n v. Seventh BRT Dev. Corp.*, 245 Conn. 1, 45-46, 717 A.2d 77, 101 (1998); *Fichera v. Mine Hill Corp.*, 207 Conn. 204, 216-17, 541 A.2d 472, 477-78 (1988).

The purchaser plaintiffs have previously argued that their CUTPA claim is tolled because of a continuing course of conduct and/or because their purchases within the limitations period "related back to their original purchases." (ECF No. 170, at 75-77.)

Under Connecticut law, a finding of a continuing course of conduct requires either a special relationship between the parties that gives rise to a continuing duty to disclose a prior wrongful act or omission, or later wrongful conduct related to a prior wrongful act. *Flannery v. Singer Asset Fin. Co.*, 312 Conn. 286, 312, 94 A.3d 553, 570 (2014) (citing *Watts v. Chittenden*, 301 Conn. 575, 583-85, 22 A.3d 1214, 1220-21 (2011)). An initial wrongful act against the plaintiff committed by the defendant is a "precondition" for application of the continuing course of conduct doctrine. *Id.*

Here, the complaint has no factual allegations about any past purchase of protective gear that could qualify as the initial wrongful act committed by any defendant against any plaintiff, much less allegations about continuous purchases over time. As explained above, the complaint also does not allege what, if any, statement(s) by any defendant any purchaser plaintiff saw or considered in making its "original purchases." And in any event, an allegedly fraudulent or deceptive act that serves as the basis for a CUTPA claim does not, standing alone, toll the statute of limitations. *Willow Springs*, 245 Conn. at 45-46, 717 A.2d at 101; *see also Fichera*, 207 Conn. at 210, 541 A.2d at 474-75. Absent allegations about a prior wrongful act to which any later wrongful conduct within the limitations period could relate, the purchaser plaintiffs cannot invoke continuous course of conduct tolling.

30

The complaint also does not allege that any purchaser plaintiff bought turnout gear from any defendant within the limitations period that could "relate back" to any other purchases (even assuming those prior purchases were alleged). The absence of these allegations is an independent reason why the purchaser plaintiffs cannot toll the CUTPA statute of limitations under the continuous course of conduct doctrine.

Separately, the complaint lacks allegations about the existence of any special relationship between the parties that would give rise to a continuing duty. The relationship of buyer and seller generally is not a sufficient relationship. *Flannery*, 312 Conn. at 313, 94 A.3d at 570. The purchaser plaintiffs' failure to allege a special relationship is also fatal to their effort to invoke continuous course of conduct tolling.

The purchaser plaintiffs' CUTPA claim is thus time-barred as to any alleged violations that occurred more than three years before the original complaint was served on the defendants. *See Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 174-75 (D. Conn. 2002).

## IV.    No plaintiff has stated a cognizable CPLA violation (fourth claim).

All plaintiffs have alleged CPLA claims for design defect, negligence and negligent design, failure to warn, and medical monitoring against all defendants. (*See* SAC ¶¶ 431-506.) Even if the Court concludes that any plaintiff has Article III standing to pursue a CPLA claim, all plaintiffs' CPLA claims fail as a matter of law for at least two reasons. First, no plaintiff has satisfied the threshold requirement to allege a cognizable injury under the CPLA. Second, Connecticut law does not recognize a standalone claim for medical monitoring.

A.    **The firefighter plaintiffs' allegations do not establish a cognizable injury under the CPLA.**

The firefighter plaintiffs do not allege that they have suffered physical manifestations of any health condition. Instead, they allege "subcellular injury that creates and increases the risk" that they "will develop cancers and other diseases." (SAC ¶¶ 32-43.)

Under Connecticut law, this type of alleged injury does not satisfy the injury element of the CPLA. *Poce v. O & G Indus.*, 210 Conn. App. 82, 95-96, 269 A.3d 899, 910 (2022), *cert. denied*, 342 Conn. 910, 271 A.3d 663 (2022). In *Poce*, the court concluded that construction workers who alleged an increased risk of asbestos-related diseases because of exposure to asbestos did not satisfy the CPLA's injury requirement because they did not allege "some physical component" of an injury. *See id.* at 96, 269 A.3d at 910.

Connecticut trial courts have reached the same conclusion. In *Dougan v. Sikorsky Aircraft Corp.*, the court declined "to expand Connecticut tort law" by allowing plaintiffs with no symptoms of disease or illness to bring their claims based on exposure to asbestos. No. X03-HHD-CV-126033069-S, 2017 WL 7806431, at *3-4 (Conn. Super. Ct. Mar. 28, 2017), *aff'd on other grounds*, 337 Conn. 27, 251 A.3d 583 (2020). Similarly, in *Bowerman v. United Illuminating*, a plaintiff's CPLA claim failed because his alleged injury was increased risk of future harm, and he had no proof of present injury. No. X04-CV-940115436-S, 1998 WL 910271, at *8 (Conn. Super. Ct. Dec. 15, 1998).

The Connecticut Supreme Court has twice signaled its reluctance to allow CPLA claims based on subclinical injuries. First, the Court affirmed the decision in *Dougan*. *See* 337 Conn. 27, 42-43, 251 A.3d 583, 593-94 (2020). In doing so, the Court assumed without deciding that the CPLA allowed claims based on "subclinical cellular injury"—and dispensed with the claims on other grounds—but emphasized that other courts have rejected the position that subclinical

32

injuries constitute compensable physical injuries. *Id.* at 42, 251 A.3d at 593 n.16 (listing decisions from multiple courts). Most recently, the Supreme Court denied the plaintiffs' petition to certify an appeal of *Poce*. *See* 342 Conn. 910, 271 A.3d 663 (2022).

The Supreme Court's decision in *Doe v. City of Stamford*, 241 Conn. 692, 697, 699 A.2d 52, 54-55 (1997), on which the plaintiffs previously relied (ECF No. 170, at 70-71), does not call for a different result. *Doe* concerns the interpretation of Connecticut's workers-compensation statute, not the CPLA. *See id.* at 693, 699 A.2d at 53. In that case, a police officer was exposed to HIV and tuberculosis while on the job. *Id.* at 694, 699 A.2d at 53. The officer's employer agreed that those exposures to fatal infectious diseases reasonably required long- and short-term medical monitoring. *Id.* at 697, 699 A.2d at 54. In concluding that the exposures constituted injury under the workers-compensation statute, the Connecticut Supreme Court emphasized the statute's "humanitarian and remedial purpose." *Id.* at 699, 699 A.2d at 55. That purpose is specific to the workers-compensation statute, not what constitutes cognizable injury under the CPLA.

Notably, the court in *Bowerman* found *Doe* inapposite for these same reasons. *See Bowerman*, 1998 WL 910271, at *10. In addition, the plaintiffs in *Poce* and *Dougan* cited *Doe* in support of their positions (Brief for Appellant at 15-16, *Poce v. O & G Indus.*, 210 Conn. App. 82, 269 A.3d 899 (2022), No. AC 43511; Brief for Appellant at 14-15, *Dougan v. Sikorsky Aircraft Corp.*, 337 Conn. 27, 251 A.3d 583 (2020), No. SC 20271), but neither court extended *Doe* beyond the context of the workers-compensation statute. As discussed above, the *Poce* and *Dougan* courts did not hold that subclinical injury is cognizable under the CPLA.

These points confirm that the firefighter plaintiffs' allegations do not fulfill the CPLA's injury requirement. The CPLA claims therefore fail as a matter of law under Rule 12(b)(6).

33

**B.**     **The purchaser and union plaintiffs have not alleged any recoverable injury under the CPLA.**

For damages for their CPLA claim, the purchaser plaintiffs allege that they must replace the gear that they purchased that contains PFAS. (*See* SAC ¶¶ 440, 443.) They also claim damages for education and training. (*See id.* ¶ 443.) For their part, the union plaintiffs allege that damages arise from their decision to direct resources toward issues related to the presence of PFAS in protective gear. (*See id.* ¶ 442.) Just as they do not satisfy the injury-in-fact requirement for Article III standing, those allegations do not satisfy the CPLA's injury requirement.

The CPLA allows a plaintiff to recover for "harm" caused by a defective product. *See* Conn. Gen. Stat. §§ 52-572m *et seq.* The statute defines harm as including "damage to property, including the product itself, and personal injuries including wrongful death." *Id.* § 52-572m(d). "As between commercial parties, 'harm' does not include commercial loss." *Id.* "[C]onsequential economic loss flowing from the property damage" are commercial losses and are therefore "not recoverable under the [CPLA]." *Sylvan R. Shemitz Designs*, 291 Conn. at 240, 967 A.2d at 1198. The purchaser plaintiffs' request for damages arising from the costs of "education and training" and the union plaintiffs' request for damages because of the diversion of "their scarce resources" are, at most, consequential economic losses. *See id.* at 232, 967 A.2d at 1193 (listing lost profits and lost commercial opportunities as examples of consequential economic losses that are commercial losses outside the scope of the CPLA). Accordingly, they are not recoverable under the CPLA.

As to replacement costs, a plaintiff must have "actually incurred" those costs for the costs to be recoverable under the CPLA. *See id.* The complaint does not allege that the purchaser plaintiffs have incurred costs to replace any gear because of the defendants' alleged CPLA

34

violations. *See supra* pp. 4-5, 13-14. They have therefore failed to allege an injury under the

CPLA, and their CPLA claims must be dismissed.

### C.      Under Connecticut law, medical monitoring is not a standalone claim.

Finally, the firefighter plaintiffs attempt to allege a CPLA claim for medical monitoring.

(*See* SAC ¶¶ 490-99.) Under Connecticut law, medical monitoring is a remedy, not a cause of

action. *See Dougan*, 2017 WL 7806431, at *7; *Bowerman*, 1998 WL 910271, at *10. This court

has dismissed a standalone claim for medical monitoring. *McCullough*, 172 F. Supp. 3d at 567.[6]

The medical-monitoring claim in the complaint therefore fails as a matter of law.

### CONCLUSION

The moving defendants ask the Court to dismiss the complaint and grant all further relief

the Court deems appropriate.

This 23rd day of June, 2025.

Respectfully submitted,

/s/ Leslie A. Cahill
Leslie A. Cahill (ct31242)
SPEARS MANNING & MARTINI LLC
2425 Post Road, Suite 203
Southport, CT 06890
Telephone: 203-292-9766
Facsimile: 203-292-9682
lcahill@spearsmanning.com

---

[6]      In their motion to dismiss the amended complaint, the moving defendants asked the Court
to strike any request for medical monitoring as a form of relief for a putative nationwide class.
(*See* ECF No. 112, at 41-44.) In their opposition, the plaintiffs stated they "do not seek
certification of a nationwide medical monitoring class." (ECF No. 170 p. 95.) In view of this
history, and for the sake of clarity, the moving defendants note that they do not interpret the
plaintiffs' request for injunctive relief in the form of "the establishment of a diagnostic medical
testing program and medical monitoring protocol" to encompass relief for any nationwide class.

Stephen D. Feldman (admitted pro hac vice)
N.C. State Bar. No. 34940
Gregory L. Skidmore (admitted pro hac vice)
N.C. State Bar No. 35571
Amanda Pickens Nitto (admitted pro hac vice)
N.C. State Bar No. 45158
Travis S. Hinman (admitted pro hac vice)
N.C. State Bar No. 50779
ROBINSON, BRADSHAW & HINSON, P.A.
600 S. Tryon Street, Suite 2300
Charlotte, North Carolina 28202
Telephone: 704-377-2536
Facsimile: 704-378-4000
sfeldman@robinsonbradshaw.com
gskidmore@robinsonbradshaw.com
anitto@robinsonbradshaw.com
thinman@robinsonbradshaw.com

*Counsel for Defendants Honeywell Safety
Products USA, Inc. and Morning Pride
Manufacturing, LLC*

*/s/* James D. Geisler
James D. Geisler (ct31447)
SHOOK, HARDY & BACON L.L.P.
185 Asylum Street
City Place I, Suite 3701
Hartford, CT 06103
Telephone: 860-515-8901
Facsimile: 860-515-8911
JGeisler@shb.com

Amy M. Crouch (admitted pro hac vice)
Brent Dwerlkotte (admitted pro hac vice)
Zachary Scott Beach (admitted pro hac vice)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Telephone: 816-474-6550
Facsimile: 8186-421-5547
amcrouch@shb.com
dbdwelkotte@shb.com
zbeach@shb.com

36

*Counsel for EIDP, Inc., DuPont de Nemours, Inc., The Chemours Company, The Chemours Company FC, LLC, and Corteva, Inc.*

/s/ Christopher J. Lynch
Christopher J. Lynch, Esq. (ct07308)
FREEMAN MATHIS & GARY, LLP
CityPlace II
185 Asylum Street, 6th Floor
Hartford, CT 06103
Telephone: 203-280-5235
Facsimile: 833-245-9040
clynch@fmglaw.com

*Counsel for Defendant Fire-Dex GW, LLC*

/s/ Michael C. Barbarula
Michael C. Barbarula, Esq. (ct29454)
Michael T. Ryan, Esq. (ct05685)
RYAN DELUCA LLP
1000 Lafayette Blvd., Suite 800
Bridgeport, CT 06604
Telephone: 203-549-6650
Facsimile: 203-549-6655
mcbarbarula@ryandelucalaw.com
mtryan@ryandelucalaw.com

James L. Stengel (admitted pro hac vice)
Paige Pavone (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: +1 212 506 5000
Facsimile:+1 212 506 5151
jstengel@orrick.com
ppavone@orrick.com

Hillary Dang (admitted pro hac vice)
2100 Pennsylvania Ave, NW
Washington, DC 20037
Telephone: 202-339-8582
Facsimile: 202-339-8500
hdang@orrick.com

*Counsel for Defendant Globe Manufacturing Company, LLC*

37

/s/ Kristen L. Zaehringer
Kristen L. Zaehringer (ct27044)
BGM LAW GROUP, LLC
515 Centerpoint Drive, Suite. No. 226
Middletown, CT 06457
Tel: (203) 914-4512
kristen@bgmlawgroup.com

*Counsel for Defendant Lakeland Industries, Inc.*

/s/ Jennifer Elyse Karr
Jennifer Elyse Karr (ct31623)
LEWIS BRISBOIS BISGAARD & SMITH LLP
185 Asylum Street, Suite 2603
Hartford, CT 06103
Telephone: (860) 566-8059
Jennifer.karr@lewisbrisbois.com

Glenn A. Friedman (admitted pro hac vice)
Paul A. Desrochers (admitted pro hac vice)
LEWIS BRISBOIS BISGAARD & SMITH LLP
45 Fremont Street, Suite 3000
San Francisco, CA 94105
Telephone: (415) 362-2580
Glenn.friedman@lewisbrisbois.com
Paul.desrochers@lewisbrisbois.com

*Counsel for Defendant Lion Group, Inc.*

/s/ Michael Weiss
Audra J. Inglis (ct31417)
MARON MARVEL BRADLEY ANDERSON TARDY
LLC
259 Seven Farms Drive, Suite 300
Charleston, SC 29492
Telephone: 843-501-2714
ainglis@maronmarvel.com

Jameson B. Carroll (admitted pro hac vice)
Michael Weiss (admitted pro hac vice)
CARROLL & WEISS LLP
2870 Peachtree Road NW, Suite 193
Atlanta, Georgia 30305
404-514-5061 (telephone)
jcarroll@carrollweiss.com

38

mweiss@carrollweiss.com

*Counsel for Defendant Milliken & Company*

/s/ Geoffrey M. Coan
Geoffrey M. Coan (ct31905)
Aaron A. Fredericks (ct29871)
Megan E. Ryan (ct31899)
HINSHAW & CULBERTSON LLP
53 State Street, 27th Floor
Boston, MA 02109
Tel: 617-213-7000/Fax: 617-213-7001
gcoan@hinshawlaw.com
afredericks@hinshawlaw.com
meganryan@hinshawlaw.com

*Counsel for Defendant Stedfast USA, Inc.*

/s/ Todd S. Sharinn
Todd S. Sharinn (ct22087)
TANNENBAUM HELPERN SYRACUSE &
HIRSCHTRITT LLP
900 Third Avenue
New York, NY 10022
(212) 702-3171
tsharinn@thsh.com

Vincent J. Syracuse (admitted pro hac vice)
Amanda M. Leone (admitted pro hac vice)
Maxwell W. Palmer (admitted pro hac vice)
TANNENBAUM HELPERN SYRACUSE &
HIRSCHTRITT LLP
900 Third Avenue
New York, NY 10022
(212) 508-6700
syracuse@thsh.com
leone@thsh.com
mpalmer@thsh.com

*Counsel for Defendant Viking Life-Saving
Equipment (America), Inc., incorrectly
named in this action as "Viking Life-Saving
Equipment America, Inc."*

/s/ Jeffrey J. Mirman
Jeffrey J. Mirman (ct05433)

39

HINCKLEY, ALLEN & SNYDER LLP
20 Church Street, 18thFloor
Hartford, CT 06103
Telephone: 860-331-2762
jmirman@hinckleyallen.com

Mark S. Cheffo (admitted pro hac vice)
Douglas E. Fleming III
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10336
P: (212) 698-3500
mark.cheffo@dechert.com
douglas.fleming@dechert.com

*Counsel for W. L. Gore & Associates, Inc.*

40

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of the filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Leslie A. Cahill
Leslie A. Cahill
Federal Bar No. ct31242
SPEARS MANNING & MARTINI, LLC
2425 Post Road, Suite 203
Southport, CT 06890
Tel: (203) 292-9766
Facsimile: (203) 292-9682
Email: lcahill@spearsmanning.com