**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------ x
UNIFORMED PROFESSIONAL FIRE      :
FIGHTERS ASSOCIATION OF          :
CONNECTICUT; STAMFORD            :
PROFESSIONAL FIRE FIGHTERS       :
ASSOCIATION, INTERNATIONAL       :
ASSOCIATION OF FIRE FIGHTERS     :
LOCAL 786; FAIRFIELD FIRE        :
FIGHTERS ASSOCIATION, IAFF LOCAL :
1426; STRATFORD PROFESSIONAL     :
FIRE FIGHTERS, IAFF LOCAL 998;   :
HAMDEN PROFESSIONAL FIRE         :
FIGHTERS, IAFF LOCAL 2687; CITY  :
OF GROTON FIRE FIGHTERS UNION,   :
IAFF LOCAL 1964; HARTFORD FIRE   :
FIGHTERS ASSOCIATION, IAFF LOCAL :
760; NEW CANAAN FIRE DEPARTMENT, :
IAFF LOCAL 3224; TORRINGTON FIRE :
FIGHTERS ASSOCIATION, IAFF       :
LOCAL 1567; WESTPORT UNIFORMED   :
FIREFIGHTERS ASSOCIATION, IAFF   :
LOCAL 1081; WILTON FIRE          :
FIGHTERS, IAFF LOCAL 2233;       :  Civil No. 3:24-CV-1101 (AWT)
SIKORSKY AIRCRAFT FIRE FIGHTERS, :
IAFF LOCAL I-68; NORWALK         :
PROFESSIONAL FIRE FIGHTERS       :
ASSOCIATION, IAFF LOCAL 830;     :
CITY OF STAMFORD; OLD MYSTIC     :
FIRE DISTRICT; THE RELIANCE FIRE :
COMPANY, INC.; PETER BROWN; PAUL :
ANDERSON; STEVE MICHALOVIC; DAN  :
TOMPKINS; NELSON HWANG; WILLIAM  :
TUTTLE; BRIAN DOANE; ARTURO      :
ROSA; TIMOTHY E. O'DONNELL; JOE  :
ROUSSO; MATTHEW WILLE; and TOM   :
REICH, individually and on       :
behalf of all others similarly  :
situated,                        :
                                 :
         Plaintiffs,             :
v.                               :
                                 :
3M COMPANY (f/k/a MINNESOTA      :
MINING AND MANUFACTURING         :
```

1

```
COMPANY), EIDP, INC., DUPONT DE  :
NEMOURS, INC., CHEMOURS COMPANY, :
CHEMOURS COMPANY FC, LLC,         :
CORTEVA, INC., ELEVATE TEXTILES, :
INC., GENTEX CORPORATION, GLOBE  :
MANUFACTURING COMPANY, LLC, W.L. :
GORE & ASSOCIATES, INC., FIRE-   :
DEX GW, LLC, HONEYWELL SAFETY    :
PRODUCTS USA, INC., INNOTEX      :
CORP., INTERTECH GROUP, INC.,    :
LION GROUP, INC., LAKELAND       :
INDUSTRIES, INC., MILLIKEN &     :
COMPANY, MORNING PRIDE           :
MANUFACTURING L.L.C., PBI        :
PERFORMANCE PRODUCTS, INC.,      :
SAFETY COMPONENTS FABRIC         :
TECHNOLOGIES, INC., STEDFAST     :
USA, INC., SOUTHERN MILLS, INC.  :
d/b/a TENCATE PROTECTIVE FABRICS :
USA, and VIKING LIFE-SAVING      :
EQUIPMENT AMERICA, INC.,         :
                                 :
            Defendants.          :
------------------------------ x
```

## RULING ON PLAINTIFFS' MOTION FOR JURISDICTIONAL DISCOVERY

The plaintiffs have moved for jurisdictional discovery as to those defendants who have moved to dismiss the Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. The defendants who have moved to dismiss the Second Amended Complaint for lack of personal jurisdiction are InterTech Group, Inc. ("InterTech"); PBI Performance Products, Inc. ("PBI"); Elevate Textiles, Inc. ("Elevate"); Safety Components Fabric Technologies, Inc. ("SCFTI"); Gentex Corporation ("Gentex"); Chemours Company ("Chemours"), Chemours Company FC, LLC ("Chemours FC"), Corteva, Inc. ("Corteva"),

DuPont de Nemours, Inc. ("New DuPont"), and EIDP, Inc. ("Old DuPont") (collectively, the "DuPont Defendants"); and Southern Mills, Inc. d/b/a TenCate Protective Fabrics ("TenCate"). For the purposes of this ruling, the court refers to these defendants as the "Moving Defendants."

For the reasons set forth below, the plaintiffs' motion for jurisdictional discovery (ECF No. 293) is being granted. The Moving Defendants' motions to dismiss at ECF Nos. 248, 250, 251, 253, and 255 are being denied in part without prejudice, i.e. only insofar as they seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

## I.   FACTUAL BACKGROUND

The Second Amended Complaint sets forth claims against the defendants for "harm resulting from the purchase, use of, and dependence upon certain fire fighter personal protective equipment ('PPE') containing hazardous levels of toxic, carcinogenic per- and polyfluoroalkyl substances ('PFAS' or 'PFAS Chemicals.')." Second Amended Complaint (ECF No. 215) ("SAC") ¶ 2. The plaintiffs allege that the "[d]efendants designed, developed, manufactured, tested, packaged, promoted, marketed, advertised, distributed, and/or sold the equipment, materials, and/or chemicals in Connecticut and caused harm to Plaintiffs, Plaintiffs' members, and members of the Class in

Connecticut." <u>Id.</u> ¶ 69. The plaintiffs claim that the "[d]efendants are chemical manufacturers, materials manufacturers, and PPE manufacturers who produced, sold, and caused to be distributed to Plaintiffs PPE that was intentionally contaminated with dangerous levels of per- and polyfluoroalkyl substances." Pls.' Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Juris. (ECF No. 292-1) at 11-12.[1]

The following Moving Defendants are Delaware corporations: Old DuPont, New Dupont, Chemours, Corteva, Elevate, Gentex, PBI, and SCFTI. <u>See</u> SAC ¶¶ 45, 46, 47, 49, 51, 53, 63, 64. InterTech is a South Carolina corporation. <u>See</u> SAC ¶ 58. TenCate is a Georgia corporation. <u>See</u> SAC ¶ 66. Chemours FC is a limited liability company formed under Delaware law. <u>See</u> Pls.' Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Juris. Ex. D (ECF No. 292-6) at 2.[2]

## II.  LEGAL STANDARD

"On a Rule (12)(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." <u>Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.</u>, 84 F.3d

---

[1] The page numbers cited to in this ruling for documents that have been electronically filed refer to the page numbers in the header of the documents and not to the page numbers in the original documents, if any.
[2] Paragraph 48 of the Second Amended Complaint states that Chemours FC is a Delaware corporation. However, Exhibit D of the Plaintiffs' Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Chemours FC's registration with the state of Connecticut, makes it clear that Chemours FC is a Delaware LLC.

560, 566 (2d Cir. 1996). Where a defendant challenges "only the sufficiency of the plaintiff's factual allegation, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). "[W]hen a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials . . . the allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." Seetransport, Wiking, Trader, Schiffanhtsgesellschaft, MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572, 580 (2d Cir. 1993) (citation omitted). However, "[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." Id.

Where a plaintiff has not made a prima facie showing of jurisdiction but has "made a sufficient start toward establishing personal jurisdiction," a court may grant jurisdictional discovery. JGB Enterprises, Inc. v. Beta Fluid Sys., Inc., 135 F. Supp. 3d 18, 26 (N.D.N.Y. 2015) (quoting Hollins v. U.S. Tennis Ass'n, 469 F.Supp.2d 67, 70-71 (E.D.N.Y. 2006)). "[C]onclusory non-fact-specific jurisdictional

allegations" are not a sufficient basis for granting permission to conduct jurisdictional discovery. Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998). But a court should grant permission to conduct jurisdictional discovery where the "plaintiffs' jurisdictional allegations are neither sparse nor insufficiently specific [but] are simply insufficiently developed at [the] time to permit judgment as to whether personal jurisdiction is appropriate." Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft, 31 Fed. Appx. 738, 739 (2d Cir. 2002).

"[W]here jurisdictional discovery has been conducted . . . a plaintiff's prima facie showing must be 'factually supported'; in other words, it must 'include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant.'" Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd., 477 F. Supp. 3d 241, 250 (S.D.N.Y. 2020) (quoting Metro. Life Ins. Co., 84 F.3d at 567) (alteration in original).

## III. DISCUSSION

As discussed below, the plaintiffs' allegations go beyond conclusory jurisdictional allegations but require further development.

"[I]n resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry." Metro. Life Ins. Co., 84 F.3d at 567. "First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." Id.

**A. Relevant Connecticut Statutes**

Under Conn. Gen. Stat. § 33-929(f):

Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising . . . (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers . . . .

Under Conn. Gen. Stat. § 52-59b(a):

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent: (1) [t]ransacts any business within the state . . . .

Under Conn. Gen. Stat. § 33-920(a), "[a] foreign corporation [with certain exceptions not applicable here] . . . may not transact business in this state until it obtains a certificate of authority from the Secretary of the State." "Each foreign corporation authorized to transact business in this state shall continuously maintain in this state: (1) [a] registered office that may be the same as any of its places of business; and (2) a registered agent at such registered office . . . ." Conn. Gen. Stat. § 33-926(a).

"A foreign limited liability company may not transact business in this state until it registers with the Secretary of the State under sections 34-275 to 34-275i, inclusive." Conn. Gen. Stat. § 34-275a(a). Under Conn. Gen. Stat. § 34-275b(5), a foreign limited liability company must provide an agent for service of process in order to register.

### 1. Conn. Gen. Stat. § 33-929(f)

#### a. PBI

The plaintiffs' jurisdictional allegations constitute a sufficient start toward establishing that PBI is amenable to service of process under Conn. Gen. Stat. § 33-929(f). See SAC ¶¶ 29, 75, 110, 119(a), 122(a), 225, 232, 234, 239, 241, 354,

356; Pls.' Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Juris. at 23 n.5 and n.6, 24, 25.[3]

### b. SCFTI

The plaintiffs' jurisdictional allegations constitute a sufficient start toward establishing that SCFTI is amenable to service of process under Conn. Gen. Stat. § 33-929(f). See SAC ¶¶ 75, 112, 119(b), 215, 232, 234, 239, 354, 356; Pls.' Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Juris. at 23 n.6.

### c. Gentex

The plaintiffs' jurisdictional allegations constitute a sufficient start toward establishing that Gentex is amenable to service of process under Conn. Gen. Stat. § 33-929(f). See SAC ¶¶ 119(a), 234, 354, 356; Pls.' Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Juris. at 23 n.6, 24-25, 49.

### d. TenCate

The plaintiffs' jurisdictional allegations constitute a sufficient start toward establishing that TenCate is amenable to service of process under Conn. Gen. Stat. § 33-929(f). See SAC

---

[3] PBI filed an affidavit stating that "[n]one of the fiber produced by PBI is manufactured using PFAS or PFAS containing chemicals and the fiber product has never contained PFAS or PFAS containing chemicals." ECF 248-2 at ¶ 3. Given that the plaintiffs have not had the benefit of discovery that could enable them to file an affidavit showing that their position is factually supported, the court does not place as much weight on this affidavit as it would at a later stage of litigation.

¶¶ 114, 215, 225, 232, 234, 239, 354, 356; Pls.' Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Juris. at 24, 30.

### e. Elevate

The plaintiffs' jurisdictional allegations constitute a sufficient start toward establishing that Elevate is amenable to service of process under Conn. Gen. Stat. § 33-929(f). See SAC ¶¶ 75, 83, 234, 354, 356; Pls.' Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Juris. at 51, 52.

### f. InterTech

Based on the submissions to date, whether the plaintiffs' jurisdictional allegations constitute a sufficient start toward establishing that InterTech is amenable to service of process under Conn. Gen. Stat. § 33-929(f) is a close call. The court has considered paragraphs 225, 234, 241, 354, and 356 of the Second Amended Complaint, which allege that InterTech supplies materials. The court has also considered the declaration of Michael Bender, the General Counsel of InterTech, in which he avers that "InterTech is a holding company," and that "InterTech does not design, manufacture, distribute or supply any goods or products," as opposed to it supplies goods or products but they do not contain PFAS-containing material. PBI and InterTech Mot. to Dismiss for Lack of Personal Juris., Bender Decl. (ECF No. 248-3) ¶¶ 3, 4 (emphasis added). These statements in Bender's

declaration have not been rebutted by an affidavit submitted on behalf of the plaintiffs. However, as discussed below, the plaintiffs' jurisdictional allegations constitute a sufficient start towards establishing jurisdiction over InterTech based on its status as PBI's parent company. Thus, the plaintiffs will be permitted to conduct jurisdictional discovery with respect to whether InterTech is amenable to service of process based on its status as the parent company of PBI. In light of all of the foregoing, the court will also allow the plaintiffs to conduct jurisdictional discovery with respect to whether InterTech is amenable to service of process without taking into account its status as the parent company of PBI so the court has a better record on which to resolve this issue.

### g. Jurisdiction over Parent Corporations

"In order to establish jurisdiction based on the presence of a subsidiary, the parent corporation must fully control the subsidiary corporation such that the corporate veil must be pierced." Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Group, Inc., 312 F. Supp. 2d 247, 255 (D. Conn. 2004) (citing Mountview Plaza Associates, Inc. v. World Wide Pet Supply, Inc., 76 Conn.App. 627, 633 (2003); Hersey v. Lonrho, 73 Conn.App. 78, 86 (2002)).

Elevate and InterTech dispute whether the court can exercise personal jurisdiction over them based on their status as parent corporations of PBI and SCFTI, respectively. <u>See</u> Elevate and SCFTI Mem. in Support of Mot. to Dismiss for Lack of Personal Juris. (ECF No. 250-1) at 4 (stating that "Elevate is the corporate parent to SCFTI, and provides administrative support to SCFTI," but "Elevate does not, and has never sold, manufactured or distributed any product for use in firefighter PPE") (citations omitted); PBI and InterTech Mem. in Support of Mot. to Dismiss for Lack of Personal Juris. (ECF No. 248-1) at 16 (stating that InterTech is "simply PBI's parent company and Plaintiffs have made no allegations that would support disregarding the corporate form").

Based on the submissions to date, whether the plaintiffs' jurisdictional allegations constitute a sufficient start toward establishing that Elevate is amenable to service of process based on its status as the parent company of SCFTI is a close call.

Elevate submits the affidavit of Gary Lucas, in which he avers, <u>inter alia</u>:

> 10. Elevate is the corporate parent company to textile companies, including SCFTI.
>
> 11. Elevate provides administrative support to its subsidiaries, including SCFTI.

12

> 12. Elevate does not, and has never, sold, manufactured or
> distributed any product for use in firefighter personal
> protective equipment ('PPE').

Elevate and SCFTI Mot. to Dismiss for Lack of Personal Juris.,
Lucas Aff. (ECF No. 250-2) ¶¶ 10-12.

The plaintiffs do not submit an affidavit in response to
Lucas's affidavit. They merely point out that their position
that SCFTI is a mere agent or department of Elevate is supported
"by the fact that a current employee of both Elevate and SCFTI,
Guy Lucas, has submitted an affidavit in support of these
Defendants' motions to dismiss asserting extensive knowledge of
both companies' operations." Pls.' Opp'n to Defs.' Mot. to
Dismiss for Lack of Personal Juris. at 52. Lucas's affidavit
states that he is president of SCFTI, but it is not apparent
from the affidavit that he is also an employee of Elevate.
However, it is fair at this stage to draw an inference in the
plaintiffs' favor that he bases his affidavit on his personal
knowledge of Elevate. Lucas's affidavit does not state that
Elevate is simply a holding company. In addition, paragraph 83
of the Second Amended Complaint alleges that Elevate "was in the
business of manufacturing and selling PFAS-containing
materials," and Lucas's affidavit does not state that Elevate
does not manufacture any materials - - only that it does not
manufacture any product for use in firefighter PPE. Also, as
discussed above, the plaintiffs' jurisdictional allegations do

13

constitute a sufficient start toward establishing that Elevate
is amenable to service of process without taking into account
its status as the parent company to SCFTI. In light of all of
the foregoing, the court will also allow the plaintiffs to
conduct jurisdictional discovery with respect to whether Elevate
is amenable to service of process based on its status as the
parent company of SCFTI so that the court has a better record on
which to resolve this issue.

The plaintiffs' have made a sufficient start toward
establishing that InterTech is amenable to service of process
based on its status as the parent company of PBI. See Pls.'
Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Juris. at
52 (asserting material overlap between corporate officers and
business addresses of InterTech and PBI).

### 2. The DuPont Defendants

The plaintiffs have shown that Chemours, Chemours FC, Old
DuPont, and Corteva are registered to do business in Connecticut
and thus amenable to service of process under Conn. Gen. Stat.
§§ 33-926(a) or 34-275b(5). See SAC ¶ 82; Pls.' Opp'n to Defs.'
Mot. to Dismiss for Lack of Personal Juris. at 47.

The plaintiffs do not contend that New DuPont is registered
to do business in Connecticut. See Pls.' Opp'n to Defs.' Mot. to
Dismiss for Lack of Personal Juris. at 47 (stating only that

Chemours, Corteva, Old DuPont, and Chemours FC have registered with the Connecticut Secretary of State). Therefore, jurisdictional discovery with respect to New DuPont will only be permissible if New DuPont itself is amenable to service of process under Conn. Gen. Stat. § 33-929(f), or the other DuPont Defendants are amenable to service of process and the conduct of those DuPont Defendants may be imputed to New DuPont under a theory of successor liability.

In LiButti v. United States, 178 F.3d 114 (2d Cir. 1999), the court noted, "various courts have held that when a person is found to be a successor in interest, the court gains personal jurisdiction over them simply as a consequence of their status as a successor in interest, without regard to whether they had any other minimum contacts with the state." Id. at 123-24 (collecting cases). At issue in the cases referred to in LiButti was substitution under Federal Rule of Civil Procedure 25(c), but that principle appears to be applicable here because the key element in the court's analysis there was the attributes and consequences of being a successor in interest. Also, at issue in Ascent Aerosystems Inc. v. Hill was whether the court had personal jurisdiction over the corporate defendants as successors in interest to the entity that had entered into a contract with the plaintiff. See Ascent Aerosystems Inc. v. Hill, No. 3:24-CV-1075 (OAW), 2025 WL 562551, at *4 (D. Conn.

15

February 20, 2025). Although the court found the "[p]laintiff's justification for personal jurisdiction insufficient," it noted that "this court can exercise personal jurisdiction over a party by way of successor liability." Id. at *4, *5. (The court also noted that in cases where personal jurisdiction is exercised based on successor liability, "the entity to which a party is a successor typically has minimum contacts with the forum." Id. at *4) See also Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Pub. Corp., 2 F. Supp. 3d 192, 216 (D. Conn. 2014) (stating that LiButti recognizes "that personal jurisdiction may be established over a non-resident on the basis of successor liability").

In general, "where a corporation sells or otherwise transfers all of its assets, its transferee is not liable for the debts and liabilities of the transferor, and . . . [the] liability of a new corporation for the debts of another corporation does not result from the mere fact that the former is organized to succeed the latter." Robbins v. Physicians for Women's Health, LLC, 311 Conn. 707, 714 (2014) (quoting 19 Am. Jur. 2d 424–25, Corporations § 2319 (2004)).[4] However, there are two relevant exceptions to this general rule: where "there is an

[4] "Successor liability is a question of State law," and the parties appear to agree that Connecticut law applies. LiButti, 178 F.3d at 124.

16

express or implied assumption of liability," and where "the transaction is fraudulent." Id. at 715 (citations omitted).

The plaintiffs' jurisdictional allegations constitute a sufficient start toward establishing that (i) New DuPont is amenable to service of process under Conn. Gen. Stat. § 33-929(f) and/or (ii) the other DuPont Defendants are amenable to service of process under Conn. Gen. Stat. §§ 33-929(f) and 52-59b(a), and an exception permitting successor liability applies, allowing personal jurisdiction to be exercised over the unregistered New DuPont. In reaching this conclusion as to clause (i), the court has considered paragraphs 33, 38, 80, 122(a), 213, 214, 215, 225, 230, 232, 234, 236, 239, and 241 of the Second Amended Complaint and the arguments on page 41[5] of the plaintiffs' opposition. In reaching this conclusion as to clause (ii), the court has considered paragraphs 29, 33, 38, 40, 47, 48, 49, 75, 80, 119(a), 122(a), 200, 213, 214, 215, 225, 230, 232, 234, 236, 239, 241, 243, 244, 245, 269, 270, 288,[6] 354, 355,

---

[5] The plaintiffs' opposition at page 41 states that "New DuPont admits and confirms, in an affidavit, that it manufactures and sells fibers branded as Nomex and Kevlar, which are used by others to manufacture PPE," citing to the affidavit at ECF No. 254-3. New DuPont submits the affidavit of Brent Dwerlkotte, in which he avers, inter alia "[t]he only products identified in Plaintiffs' Complaint related to [New DuPont] [are] Nomex® and Kevlar®." DuPont Defendants Mot. to Dismiss for Lack of Personal Juris., Dwerlkotte Aff. ECF No. 254-3, ¶ 5.

[6] The Second Amended Complaint at paragraph 288 quotes a statement attributable to New DuPont from the website domain www.dupont.com. At times, the Second Amended Complaint cites to other statements about the DuPont Defendants from this website domain, which does not appear to distinguish among the DuPont Defendants.

356 of the Second Amended Complaint and the arguments on pages 23 n.5 and n.6, 41, and 43-44 of the plaintiffs' opposition.

**B. Requirements of Due Process**

"The due process test for personal jurisdiction has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." Metro. Life Ins. Co., 84 F.3d at 567. "To comport with due process, a forum state may exercise jurisdiction over an out-of-state corporate defendant only if the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." U.S. Bank National Association v. Bank of America N.A., 916 F.3d 143, 149 (2d Cir. 2019) (internal quotation marks omitted) (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011)).

For the "purposes of [the due process] inquiry, a distinction is made between 'specific' jurisdiction and 'general' jurisdiction." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010). "Specific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 & n. 8 (1984)). In

18

contrast, "[a] court's general jurisdiction . . . is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." Id.

### 1. General Jurisdiction

The plaintiffs only assert general jurisdiction as to Chemours, Chemours FC, Corteva, and Old DuPont. See Pls.' Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Juris. at 47. The plaintiffs contend that Brown v. Lockheed Martin Corporation "held that registration did not constitute consent to submit to the general personal jurisdiction of Connecticut courts" but "was abrogated by the Supreme Court's opinion in Mallory." Pls.' Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Juris. at 48 (citing Brown v. Lockheed Martin Corp., 814 F.3d 619, 623 (2d Cir. 2016); Mallory v. Norfolk S. Ry. Co., 600 U.S. 122 (2023)). The court disagrees.

"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." Marks v. United States, 430 U.S. 188, 193 (1977) (internal quotation marks and citation omitted). Justice Alito provided the decisive fifth vote with respect to

the judgment in <u>Mallory</u>. At issue was a Pennsylvania law
concerning registration of foreign corporations. "Consistent
with Pennsylvania law, the company had registered as a 'foreign'
corporation, most recently in 1998." <u>Mallory</u>, 600 U.S. 122, 151
(Alito, J., concurring) (citing 15 Pa. Cons. Stat. § 411(a)
(2014)) (further citation omitted). "Then, as now, Pennsylvania
law expressly provided that 'qualification as a foreign
corporation' was a 'sufficient basis' for Pennsylvania courts
'to exercise general personal jurisdiction' over an out-of-state
company." <u>Id.</u> (quoting 42 Pa. Cons. Stat. § 5301(a)(2)(i)
(2019)). <u>See also Mallory</u>, 600 U.S. at 134, (quoting 42 Pa.
Cons. Stat. § 5301(a)(2)(i)) (stating that "Pennsylvania law is
explicit that 'qualification as a foreign corporation' shall
permit state courts to 'exercise general personal jurisdiction'
over a registered foreign corporation, just as they can over
domestic corporations").

The Pennsylvania statute provides in relevant part:

The existence of any of the following relationships between
a person and this Commonwealth [including qualification as
a foreign corporation under the laws of this Commonwealth]
shall constitute a sufficient basis of jurisdiction to
enable the tribunals of this Commonwealth to exercise
general personal jurisdiction over such person . . . .

42 Pa. Cons. Stat. § 5301(a). "[A]lthough the Connecticut
registration statute does not expressly limit the matters as to
which an authorized agent may accept service of process, neither

20

does it contain express language alerting the potential registrant that by complying with the statute and appointing an agent it would be agreeing to submit to the general jurisdiction of the state courts." Brown, 814 F.3d at 636. Conn. Gen. Stat. § 33-929(a) provides in relevant part: "[t]he registered agent of a foreign corporation authorized to transact business in this state is the corporation's agent for service of process, notice or demand required or permitted by law to be served on the foreign corporation." "The inclusion of [the] phrase ('permitted by law') and the omission of any specific reference to 'general jurisdiction,' . . . differentiates Connecticut's registration statute from others that have been definitively construed to convey a foreign corporation's consent to general jurisdiction." Brown, 814 F.3d at 637. For this reason, in Brown, the court contrasted the Connecticut statute with the Pennsylvania registration statute at issue in Mallory. See id.

Therefore, registration by defendants Chemours, Corteva, Old DuPont, and Chemours FC does not constitute consent to general jurisdiction in Connecticut.

## 2. Specific Jurisdiction

The plaintiffs assert specific jurisdiction with respect to all of the Moving Defendants.

21

### a. Minimum Contacts

"With respect to minimum contacts, [the court] must determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." Tanner v. Heath Graphics LLC, No. 115CV0098LEKCFH, 2017 WL 922013, at *5 (N.D.N.Y. 2017) (quoting Chloe, 616 F.3d at 164). "The minimum contacts test asks whether a defendant has engaged in 'purposeful availment'—that is, whether the contacts indicate the defendant's intent to invoke the benefits and privileges of" Connecticut law. Weisblum v. Prophase Labs, Inc., 88 F. Supp. 3d 283, 289 (S.D.N.Y. 2015).

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 283–84 (2014) (internal quotation marks omitted) (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)). "[T]he relationship must arise out of contacts that the 'defendant himself' creates with the forum State." Id. at 284 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). "We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." Id. (citing Helicopteros, 466 U.S. at 417 ("[The] unilateral activity of

22

another party or a third person is not an appropriate
consideration when determining whether a defendant has
sufficient contacts with a forum State to justify an assertion
of jurisdiction")).

The plaintiffs note that "in Asahi Metal Industry v.
Superior Court of California, 480 U.S. 102 (1987), the Supreme
Court was evenly divided over whether mere awareness of a
nonresident defendant that its products may reach the forum
state in the stream of commerce is sufficient to support a forum
state's exercise of specific jurisdiction (hereinafter, the
'pure stream of commerce' theory), or, rather, whether some
additional conduct of the defendant must indicate an intent or
purpose to serve the market in the state (hereinafter, the
'stream of commerce plus' test)."  Pls.' Opp'n to Defs.' Mot. to
Dismiss for Lack of Personal Juris. at 31. The plaintiffs then
point out that the court in Kernan v. Kurz-Hastings, Inc., 175
F.3d 236, 244 (2d Cir. 1999) "expressly declined to adopt either
stream of commerce theory from Asahi, holding instead that 'even
assuming arguendo that we were to adopt the Asahi plurality's
more restrictive view, [i.e., the 'stream of commerce plus'
test], we would still conclude that the [agreement at
issue] . . . support[s] a finding of minimum contacts.'" Pls.'
Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Juris. at
33 (alterations in original). The plaintiffs contend that "[t]he

SAC's allegations as to each of the PJ Moving Defendants would likewise fulfill either test. See, e.g., SAC ¶ 122 (PBI advertises that its materials are the 'preferred choice' of fire departments across the Americas and around the world, and 'protect 41% of all firefighters in North America'); (Elevate, parent of SCFTI, advertises itself as the world's leading developer of fire-resistant material, represented in fire departments worldwide and across the United States)." Id. However, Kernan is not controlling authority on the question of whether the requirements of due process can be satisfied based on the pure stream of commerce theory.

In J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873 (2011), Justice Kennedy filed a plurality opinion, which was joined by three other Justices. Justice Breyer filed an opinion concurring in the judgment, which was joined by one other Justice. Justice Breyer observed:

> But though I do not agree with the plurality's seemingly strict no-jurisdiction rule, I am not persuaded by the absolute approach adopted by the New Jersey Supreme Court and urged by respondent and his amici. Under that view, a producer is subject to jurisdiction for a products-liability action so long as it "knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states."

Nicastro, 564 U.S. at 890–91 (Breyer, J., concurring) (emphasis in original) (quoting Nicastro v. McIntyre Machinery America, Ltd., 201 N.J. 48, 76–77 (2010)).

24

Justice Breyer observed, "[i]n my view, the outcome of this case is determined by our precedents." Id. at 887. With respect to those precedents, he referred to "the heretofore accepted inquiry of whether, focusing upon the relationship between 'the defendant, the forum, and the litigation,' it is fair, in light of the defendant's contacts with that forum, to subject the defendant to suit there." Id. at 891 (emphasis in original) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). With respect to the case before the Court, Justice Breyer stated:

> Here, the relevant facts found by the New Jersey Supreme Court show no "regular . . . flow" or "regular course" of sales in New Jersey; and there is no "something more," such as special state-related design, advertising, advice, marketing, or anything else. Mr. Nicastro, who here bears the burden of proving jurisdiction, has shown no specific effort by the British Manufacturer to sell in New Jersey. He has introduced no list of potential New Jersey customers who might, for example, have regularly attended trade shows. And he has not otherwise shown that the British Manufacturer "purposefully avail[ed] itself of the privilege of conducting activities" within New Jersey, or that it delivered its goods in the stream of commerce "with the expectation that they will be purchased" by New Jersey users. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980) (internal quotation marks omitted).

> There may well have been other facts that Mr. Nicastro could have demonstrated in support of jurisdiction. And the dissent considers some of those facts. See Nicastro, 564 U.S. at 894-95 (Ginsburg, J., dissenting) (describing the size and scope of New Jersey's scrap-metal business). But the plaintiff bears the burden of establishing jurisdiction, and here I would take the facts precisely as the New Jersey Supreme Court stated them.

Id. at 889-890. See Williams v. Romarm, SA, 756 F.3d 777, 784 (D.C. Cir. 2014) (holding that Nicastro requires that "at a

minimum, a plaintiff trying to establish personal jurisdiction over a foreign corporation must show a 'regular flow or regular course of sales' in the forum state, or some additional efforts directed toward the forum state, such as 'special state-related design, advertising, advice, [or] marketing'" (quoting <u>Nicastro</u>, 564 U.S. at 889 (Breyer, J., concurring)); <u>UTC Fire & Sec. Americas Corp., Inc. v. NCS Power, Inc.</u>, 844 F. Supp. 2d 366, 375 (S.D.N.Y. 2012) (stating that "[t]he soundness of the 'stream of commerce' theory has been called into question by the Supreme Court's recent ruling in <u>Nicastro</u>"); <u>Tanner v. Heath Graphics LLC</u>, No. 115CV0098LEKCFH, 2017 WL 922013, at *7 (N.D.N.Y. March 8, 2017) ("Thus, <u>Kernan</u>'s holding on this score [the due process analysis] conflicts with Justice Breyer's concurrence in <u>Nicastro</u> and is no longer good law."); <u>Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co., Ltd.</u>, No. 517CV00052BKSTWD, 2020 WL 5258313, at *9 (N.D.N.Y. September 3, 2020) ("Supreme Court and Second Circuit precedent since [<u>Nicastro</u>] have emphasized the importance of purposeful 'State-specific targeting, regular in-State sales, or planned market exposure to [the forum state]' in establishing the minimum contacts necessary for personal jurisdiction."); <u>State Farm Fire & Cas. Co. v. Swizz Style, Inc.</u>, 246 F. Supp. 3d 880, 890 (S.D.N.Y. 2017) ("Thus, despite the <u>Kernan</u> court's determination that exercise of personal jurisdiction was warranted where the

manufacturer 'did indeed attempt to [indirectly] serve the [forum state] market,' the revised strictures of due process now require 'something more.'" (citations omitted)); Bacon v. Fabio Perini S.p.A., No. 116CV1218BKSCFH, 2017 WL 4861489, at *10 (N.D.N.Y. July 7, 2017) ("Though the Second Circuit has not disavowed Kernan, its decisions following Kernan have emphasized state-directed marketing."); Ikeda v. J. Sisters 57, Inc., No. 14-CV-3570 ER, 2015 WL 4096255, at *8 (S.D.N.Y. July 6, 2015) (highlighting the absence of allegations "that demonstrate [the manufacturer's] specific effort to sell in New York, such as 'special state-related design, advertising, advice, marketing, or anything else'" (citation omitted)); Quarmby v. Rexon Indus. Corp. Ltd., No. 21-CV-00671-LJV-JJM, 2022 WL 17812965, at *5 (W.D.N.Y. November 28, 2022) (collecting cases), report and recommendation adopted, No. 21-CV-671-LJV-JJM, 2022 WL 17812576 (W.D.N.Y. December 19, 2022).

As noted above, the plaintiffs contend that the allegations in paragraph 122 of the Second Amended Complaint support a finding of minimum contacts under the stream of commerce plus test. In addition, they argue:

> Here, Plaintiffs allege that each of the PJ Moving Defendants manufactured and sold PFAS and/or PFAS-containing PPE materials with the knowledge, intention, and reasonable expectation that their products would be incorporated into PPE sold, used, and worn in Connecticut. See, e.g., [SAC] ¶¶ 76, 80, 83, 88, 110, 112, 114, 119. Importantly, the PJ Moving Defendants develop, manufacture,

27

and sell highly specialized PPE materials for use in PPE, which is subject to national testing and certification standards. Id. ¶ 74. Together with the other Defendants in this action, the PJ Moving Defendants form a small ecosystem of interconnected entities that regularly produce and distribute specialized products for a niche market: all fire departments and fire fighters in the United States. See, e.g., id. ¶¶ 75-76. The SAC outlines each Defendant's role within this ecosystem and establishes that each PJ Moving Defendant produces substantial amounts of PFAS and/or PFAS-containing materials, which are incorporated into PPE through established distribution channels and ultimately distributed throughout the United States, including in Connecticut. Such allegations, combined with each PJ Moving Defendant's "presumptive knowledge" of their own sales volumes and the nature of the other Defendants' businesses, strongly indicate an expectation of "true national distribution," as in UTC Fire & Sec. Americas Corp. As such, this is the exact circumstance where stream of commerce jurisdiction is appropriate.

Pls.' Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Juris. at 38. The plaintiffs' jurisdictional allegations in paragraphs 122, 74, and 75-76 do not satisfy the requirement that, when focusing on "the relationship among the defendant, the forum, and the litigation," Shaffer, 433 U.S. at 204, "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State." Walden, 571 U.S. at 284 (emphasis in original) (quoting Burger King Corp., 471 U.S. at 475). Thus the plaintiffs' reliance on their an "ecosystem" theory seems misplaced. However, the plaintiffs have made a sufficient start toward establishing that the Moving Defendants have sufficient minimum contacts with Connecticut.

### i. PBI

The plaintiffs' jurisdictional allegations constitute a sufficient start toward establishing that PBI has sufficient minimum contacts with Connecticut. See SAC ¶¶ 29, 75, 110, 119(a), 122(a), 225, 232, 234, 239, 241, 354, 356; Pls.' Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Juris. at 23 n.5 and n.6, 24, 25.

### ii. SCFTI

The plaintiffs' jurisdictional allegations constitute a sufficient start toward establishing that SCFTI has sufficient minimum contacts with Connecticut. See SAC ¶¶ 75, 112, 119(b), 215, 232, 234, 239, 354, 356; Pls.' Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Juris. at 23 n.6.

### iii. Gentex

The plaintiffs' jurisdictional allegations constitute a sufficient start toward establishing that Gentex has sufficient minimum contacts with Connecticut. See SAC ¶¶ 119(a), 234, 354, 356; Pls.' Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Juris. at 23 n.6, 24-25, 49.

### iv. TenCate

The plaintiffs' jurisdictional allegations constitute a sufficient start toward establishing that TenCate has sufficient minimum contacts with Connecticut. See SAC ¶¶ 114, 215, 225,

232, 234, 239, 354, 356; Pls.' Opp'n to Defs.' Mot. to Dismiss
for Lack of Personal Juris. at 24, 30.

### v.   Elevate and InterTech

The plaintiffs' jurisdictional allegations constitute a
sufficient start toward establishing that Elevate itself has
sufficient minimum contacts with Connecticut. See SAC ¶¶ 75, 83,
234, 354, 356; Pls.' Opp'n to Defs.' Mot. to Dismiss for Lack of
Personal Juris. at 51, 52.

The court concludes that the plaintiffs have made a
sufficient start towards establishing that InterTech has
sufficient minimum contacts with Connecticut based on its status
as the parent company of PBI after reviewing the jurisdictional
allegations in paragraphs 225, 234, 241, 354, and 356 of the
Second Amended Complaint; the declaration of Michael Bender; and
the arguments at page 52 of the plaintiffs' opposition to the
motions to dismiss for lack of personal jurisdiction.

For the reasons set forth in Part III.A.1, the court is
allowing the plaintiffs to conduct jurisdictional discovery with
respect to whether both Elevate and InterTech have sufficient
minimum contacts with Connecticut, with and without taking into
account their status as parent companies of SCFTI and PBI,
respectively.

                    vi.   **The DuPont Defendants; Successor Entities**

     With respect to Chemours, the plaintiffs allege that

Chemours does business in Connecticut. <u>See</u> SAC ¶ 47. With

respect to Chemours and Old DuPont, the plaintiffs allege:

> In 2015, Old DuPont spun off its performance chemical
> business as a new, publicly traded company, Chemours. In
> connection with the transfer, Chemours assumed certain Old
> DuPont assets and liabilities, which include business lines
> and liabilities relating to the design, manufacture,
> marketing, distribution, and/or sale of certain materials
> and/or chemicals that are the subject of this lawsuit.

<u>Id.</u> With respect to Corteva, the plaintiffs allege that Corteva

does business in Connecticut. <u>Id.</u> ¶ 49. With respect to New

DuPont, Corteva, and Old DuPont, the plaintiffs allege:

> In 2019, New DuPont spun off its agricultural business as a
> new, publicly traded company, Corteva, which currently
> holds Old DuPont as a subsidiary. In connection with these
> transfers, Corteva assumed certain Old DuPont assets and
> liabilities, which include business lines and liabilities
> relating to the design, manufacture, marketing,
> distribution, and/or sale of certain materials and/or
> chemicals that are the subject of this lawsuit.

<u>Id.</u>

     With respect to Chemours FC, the plaintiffs allege that

"Chemours FC operates as a subsidiary of Chemours and

manufactures certain materials and/or chemicals that are the

subject of this lawsuit." <u>Id.</u> ¶ 48.

     The plaintiffs allege that "[i]n 2015, DuPont spun off its

'performance chemicals' business, as well as two-thirds of its

                                   31

environmental liabilities and 90% of its active litigation, to
Defendant Chemours." Id. ¶ 269. They allege further that "[i]n
2019, Paul Kirsch, then-president of the fluoroproducts business
at Chemours, testified before Congress that 'DuPont designed the
separation of Chemours to create a company where it would dump
its liabilities and protect itself from environmental cleanup
and related responsibilities.'" Id. ¶ 270.

The court concludes that the plaintiffs have made a
sufficient start toward establishing that Old DuPont, New
DuPont, Corteva, Chemours, and Chemours FC have sufficient
minimum contacts with Connecticut after considering the
following: the jurisdictional allegations in paragraphs 29, 33,
38, 40, 47, 48, 49, 75, 80, 119(a), 200, 213, 214, 215, 225,
230, 232, 234, 236, 239, 241, 269, 270, 354, 355, and 356 of the
Second Amended Complaint; and the arguments made by the
plaintiffs at pages 41 and 43 through 45 of their opposition.

### b. Reasonableness

The reasonableness "inquiry asks whether the assertion of
personal jurisdiction comports with 'traditional notions of fair
play and substantial justice'—that is, whether it is reasonable
under the circumstances of the particular case." Metro. Life, 84
F.3d at 568 (citing International Shoe Company v. Washington,
326 U.S. 310, 316 (1945)). "In analyzing whether it is

32

reasonable to exercise personal jurisdiction in the circumstances of a particular case, the Supreme Court has held that courts must evaluate the following factors: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the several states in furthering fundamental substantive social policies." WorldCare Ltd. Corp. v. World Ins. Co., 767 F. Supp. 2d 341, 361 (D. Conn. 2011) (citing Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113-14 (1987)).

At this time, the first factor, the burden on the defendants, appears to weigh slightly in favor of the Moving Defendants. None are Connecticut corporations and none have their principal place of business in Connecticut. See SAC ¶¶ 45-66. However, "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." Metro. Life Ins. Co., 84 F.3d at 574.

At this time, the second factor, the interests of the forum state in adjudicating the case, appears to weigh in favor of the plaintiffs. The "[p]laintiffs include the UPFFA, a statewide

33

labor organization representing all Professional Firefighters in the state of Connecticut, twelve professional local fire fighter unions . . . the Connecticut Purchaser Subclass . . . [and] twelve individual fire fighters . . . who sue on behalf of themselves and other Connecticut firefighters who are similarly situated." SAC ¶ 1. Also, in 2024, Connecticut enacted "Public Act 24-59 – An Act Concerning the Use of PFAS in Certain Products," which "will phase out the use of PFAS in dozens of common consumer goods and safety products," including turnout gear. Id. ¶¶ 312-313.

At this time, the third factor, the plaintiffs' interest in obtaining convenient and effective relief, appears to weigh in favor of the plaintiffs given that "each named Plaintiff is a Connecticut resident or state governmental subdivision." Pls.' Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Juris. at 39.

As to the fourth factor, the efficient administration of justice, "courts generally consider where witnesses and evidence are likely to be located." Metro. Life Ins. Co., 84 F.3d at 574. The plaintiffs state that "much of the witnesses and evidence and evidence are likely to be located in Connecticut." Pls.' Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Juris. at

34

39. Thus, at this time, the fourth factor appears to weigh in favor of the plaintiffs.

Finally, with respect to the shared interest of the several states in furthering fundamental substantive social policies, the plaintiffs contend that "Connecticut has a strong interest in protecting its firefighters from hazardous products and adverse health effects," as well as "an interest in protecting the treasuries of its governmental subdivisions, in fair dealing in government contracting, and in consumer protection." Pls.' Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Juris. at 39. This factor weighs in favor of the plaintiffs.

Based on the foregoing, the plaintiffs have made a sufficient showing at this time with respect to the reasonableness of exercising personal jurisdiction over the Moving Defendants.

## IV.    CONCLUSION

The plaintiffs' motion for jurisdictional discovery (ECF No. 293) is hereby GRANTED. The plaintiffs and the Moving Defendants have been referred to United States Magistrate Judge Thomas O. Farrish, who will set a schedule for jurisdictional discovery.

The Moving Defendants' motions to dismiss at ECF Nos. 248, 250, 251, 253, and 255 are hereby DENIED in part without

prejudice to renewal, i.e., only insofar as they seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. In the event of renewed motions to dismiss for lack of personal jurisdiction, there will not be an omnibus response and there must be a separate analysis for each defendant.

It is so ordered.

Dated this 9th day of January 2026, at Hartford, Connecticut.

/s/AWT
—————————————————
Alvin W. Thompson
United States District Judge
