UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNIFORMED PROFESSIONAL FIRE FIGHTERS ASSOCIATION OF CONNECTICUT, et al<br><br>Plaintiffs,<br><br>v.<br><br>3M COMPANY (F/K/A MINNESOTA MINING AND MANUFACTURING COMPANY), et al<br><br>Defendants. | Case No.: 3:24-cv-01101-AWT<br><br><br><br>FEBRUARY 23, 2026 |

## SUPPLEMENTAL AUTHORITY IN FURTHER SUPPORT OF MOTION TO RECUSE

Plaintiffs submit this brief pursuant to the Court's February 17, 2026 Order (the "February 17 Order") and February 20, 2026 Order (the "February 20 Order"), which invited parties to file motions and supplemental authority on whether two circumstances which the Court has concluded do not warrant recusal in isolation nevertheless warrant recusal in combination. Dkt. No. 363.  For the reasons outlined herein, Plaintiffs believe that recusal is warranted pursuant to 28 U.S.C. § 455(a) because the cumulative effect of circumstances outlined in the Court's previous notices creates the appearance of partiality.

This action was filed on June 25, 2024, by a putative class of all Connecticut fire fighters who allege that they are at increased risk of developing dangerous health conditions as a result of defendants' concealment of the dangers and health risks associated with the use and incorporation of PFAS chemicals in their personal protective equipment (PPE). Defendants are the inventors, manufacturers, and suppliers of PFAS, and the manufacturers of fire fighter PPE that contains PFAS (3M Company, EIDP, Inc., Dupont De Nemours, Inc., Chemours Company,

1

Chemours Company FC, LLC Corteva, Inc., Elevate Textiles, Inc., Gentex Corporation, Globe Manufacturing Company, LLC, W.L. Gore & Associates, Inc., Fire-Dex GW, LLC, Honeywell Safety Products USA, Inc., Intertech Group, Inc., Lion Group, Inc., Milliken & Company, Morning Pride Manufacturing L.L.C., PBI Performance Products, Inc., Safety Components Fabric Technologies, Inc., and Stedfast USA, Inc.). In total, 19 defendants are currently named in this action.

3M and the DuPont companies (EIDP, Inc., Dupont De Nemours, Inc., Chemours Company, Chemours Company FC, LLC Corteva, Inc., together the "DuPont Defendants") are the chemical manufacturers that Plaintiffs allege supplied the PFAS that was incorporated into their turnout gear. These defendants are by far the largest and most diverse companies among the defendants and have been engaged in massive and ongoing litigation throughout the United States in suits alleging personal injury and environmental contamination due to PFAS. As such, they have taken a leadership role in defending against the fire fighters' claims in this case.

On October 1, 2024, Attorney James Geisler of Shook Hardy & Bacon LLP ("SHB") filed an appearance on behalf of the DuPont Defendants. Two months later, on December 2, 2024, Judge Farrish was assigned to replace Judge Spector as the Magistrate Judge assigned to this matter. Attorney Geisler had been a law clerk to Judge Farrish through August 25, 2023. Even though he was less than sixteen months out of his clerkship, neither he nor his law firm disclosed this potential conflict to Plaintiffs or the Court. Had Attorney Geisler or SHB disclosed this information, as they should have, the present motion might have been avoided.

On February 12, 2026, the Court issued a Notice analyzing whether Attorney Geisler's representation of the DuPont Defendants warranted his recusal under 28 U.S.C. § 455 and concluded that it does not. Dkt. No. 353. On February 17, 2026, the Court issued a second

2

notice, this time analyzing whether the impending employment of Judge Farrish's daughter, Amanda Farrish, as an attorney at Wiggin and Dana LLP, counsel for 3M Company, compelled recusal under 28 U.S.C. § 455(a) or (b) and concluded that this second circumstance similarly did not warrant recusal. Dkt. No. 357.

On February 17, 2026, Plaintiffs submitted a Motion for Reconsideration of the Court's February 12 2026 Notice. Dkt. No. 358. Plaintiffs argued that the proper interval from which to measure the two-year period of repose routinely observed by courts in this District and many others was from the end of Attorney Geisler's clerkship, August 25, 2023, and the date this Court was first assigned to this case, December 2, 2024. At that point, Attorney Geisler was just over 15 months beyond the completion of his clerkship. Under that framing, Plaintiffs argued, the Court was assigned to the case well within the 24-month period of repose typically observed in this District. Moreover, Plaintiffs argued that ongoing social and professional contacts coupled with an arguably inadequate period of repose had the potential to give rise to the appearance of impropriety, making recusal appropriate.

## LEGAL STANDARD

28 U.S.C. § 455(a) is an objective, standard that turns on "whether a reasonable person knowing and understanding all the relevant facts would recuse the judge" because of an appearance of impropriety. *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988). "The goal of section 455(a) is to avoid not only partiality but also *the appearance of partiality.*" *Ligon v. City of New York*, 736 F.3d 118, 123 (2d Cir. 2013), *vacated in part*, 743 F.3d 362 (2d Cir. 2014)(emphasis added). Section 455(a)'s "appearance" based rule is broader than Section 455(b), with the Second Circuit holding that a circumstance insufficient to trigger recusal under § 455(b) may still require disqualification under § 455(a) based on appearance. *See In re*

*Certain Underwriter*, 294 F.3d 297, 306 (2d Cir. 2002)("Even where the facts do not suffice for recusal under § 455(b), however, those same facts may be examined as part of an inquiry into whether recusal is mandated under § 455(a)").

The two sections "focus on different types of conflicts" with § 455(b) "focus[ing] on interest and situations which raise conflicts, while [] [t]he goal of section 455(a) is to avoid even the appearance of partiality . . . [i]f it would appear to a reasonable person that a judge has knowledge of facts that would give [her] an interest in the litigation then an appearance of partiality is created even though no actual partiality exists." *In re Certain Underwriter*, 294 F.3d 297, 306 (2d Cir. 2002) quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (internal citation and quotation marks omitted).

The Second Circuit recognizes that the appearance of partiality can arise from a series of events or circumstances which, taken together cumulatively require recusal although each taken alone would not. *See, e.g. United States v. Amico,* 486 F.3d 764, 768 (2d Cir. 2007); *Ligon v. City of New York,* 736 F.3d 118, 126 (2d Cir. 2013), *vacated in part*, 743 F.3d 362 (2d Cir. 2014)("[T]he relevant question at all times remains whether, under the circumstances taken as a whole, a judge's impartiality may reasonably be called into question").

Other circuits are in accord with this "cumulative effects" approach. *See, e.g. In re Martinez-Catala,* 129 F.3d 213, 221 (1st Cir. 1997) ("the whole is sometimes greater than the sum of the parts…[t]he cumulative effect of a judge's individual actions, comments and past associations could raise some question about impartiality, even though none (taken alone) would require recusal."); *In re Sch. Asbestos Litig.*, 977 F.2d 764, 782 (3d Cir. 1992), *as amended* (Oct. 8, 1992)("We need not decide whether any of these facts alone would have required disqualification, for, as we shall explain, we believe that together they create an appearance of

4

partiality that mandates disqualification."); *United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998)("[I]t is certainly possible for a confluence of facts to create a reason for questioning a judge's impartiality, even though none of those facts, in isolation, necessitates recusal under § 455(a)."); *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 41 (4th Cir. 1995)("Though probably insufficient to merit recusal in isolation . . . [o]verall, the appearance of impropriety in this case requires that the presiding district court judge be recused[.]").

## ARGUMENT

The record and facts of this case warrant recusal under 28 U.S.C. § 455(a), including:

- The Court's former law clerk appearing as counsel for the five DuPont Defendants that occupy leadership roles among the defense group, before the expiration of the two-year repose period traditionally observed in this District and elsewhere;

- The failure to disclose the circumstances surrounding that appearance once this Court was assigned to the case;

- The Court's ongoing social and professional contacts with Attorney Geisler;

- Judge Farrish's daughter's recent employment at Wiggin and Dana LLP, counsel for 3M (the other lead defendant).

Cumulatively, these facts and circumstances create the objective appearance that the Court has past, ongoing, and prospective personal and professional connections with attorneys and law firms serving in leadership roles in this litigation which could lead a hypothetical reasonable, disinterested party to question the impartiality of the Court. Given the nature of this action, the role the DuPont Defendants and 3M are playing in it, and the press coverage this action has garnered (including with respect to the issue of this Court's recusal), Plaintiffs believe recusal is the best course to preserve the appearance of impartiality.

I.   SHB'S HANDLING OF ATTORNEY GEISLER'S REPRESENTATION OF THE DUPONT DEFENDANTS CREATES THE APPEARANCE OF PARTIALITY

Plaintiffs believe the circumstances surrounding Attorney Geisler's appearance and his firm's failure to disclose the issue contribute to an appearance of partiality. Plaintiffs understand that as a matter of custom judges within this District, including the Chief Judge, have determined that a two-year repose period is appropriate. *See, e.g. Connecticut et al v. Teva Pharmaceuticals USA, Inc.*, 3:19CV00710-MPS, Dkt. No. 15 (D. Conn. Apr. 25, 2024) ("My chambers policy is that law clerks should not appear in cases in which I am presiding until two years have elapsed since the clerkship ended…. this particular former law clerk…last clerked for me almost ten years ago. Further, I do not socialize with her, except for chatting when I occasionally see her around town.") (Citations omitted); *Paws for a Treat LLC v. Christmas Tree Shop*, No. CIV.A. 3:05CV1304-SRU, 2006 WL 236750, at *2 (D. Conn. Jan. 24, 2006) ("I wait two years, but am unaware of any authority suggesting that a period of more than two years should be observed.").

The Court's prior Notice states that a one-year insulation period is "common" before former clerks may appear, but it does not state that the Court has adopted such a policy. February 12 Notice, at 3. As a backstop, the February 12 Notice evaluates the timing of Mr. Geisler's appearance against a two-year period. *Id.* But for the reasons articulated in Plaintiffs' prior filing on this issue, Plaintiffs believe the correct date by which to measure if a two-year period of repose has run is December 2, 2024, the date on which this Court was assigned to this action, rather than the October 2, 2025 date on which Judge Thompson referred discovery to this Court. *See* December 2, 2024 docket entry ("Judge Thomas O. Farrish added. Judge Robert M. Spector no longer assigned to case. (Langello, N) (Entered: 12/02/2024)"; Dkt. No. 309.

It was incumbent upon Attorney Geisler and SHB to bring his involvement in this case to the Court's attention on December 2, 2024. This is especially true given the difficulty tracking the appearances and work histories of each attorney involved in this complex case, which involves dozens of parties, many represented by multiple law firms, each of which has had multiple attorneys appear on behalf of their clients.

Rather than promptly and candidly disclosing at the time of assignment and risk causing this action to be returned to the wheel for reassignment to a different Magistrate Judge, SHB remained silent. Under these circumstances, it is reasonable to infer that SHB calculated that once the two-year repose period elapsed, the likelihood of recusal would diminish, preserving a strategic benefit for their clients.

The Second Circuit case *In re FCC* is instructive here. 208 F.3d 137, 139 (2d Cir. 2000). In *FCC*, a Second Circuit panel ruled against appellee NextWave. Before filing a motion for reconsideration of that decision, NextWave retained Gibson Dunn, where one of the Judges on the Second Circuit panel had been a partner prior to his elevation to the judiciary. As the Second Circuit observed:

> It cannot have escaped the notice of the Gibson, Dunn firm and its several partners that one of the members of this Court's panel, Judge Robert Sack, was a member of that firm from 1986 until 1998. It was therefore obvious that Gibson, Dunn's appearance, if accepted by this Court, would draw into question Judge Sack's ability or willingness to remain on the panel . . . [w]hen Gibson, Dunn appeared, it was apparent to all parties and this Court that circumstances might arise in which this case would return to the originally assigned panel.

*In re F.C.C.*, 208 F.3d 137, 139 (2d Cir. 2000). Without making any finding as to good faith or intent, the Second Circuit focused on the risk that litigants may affect the identity of a decisionmaker in a proceeding via retention of counsel that may disqualify a jurist, and held that:

7

> It is clear, however, that tactical abuse becomes possible if a lawyer's appearance can influence the recusal of a judge known to be on a panel. Litigants might retain new counsel for rehearing for the very purpose of disqualifying a judge who ruled against them. As between a judge already assigned to a panel, and a lawyer who thereafter appears in circumstances where the appearance might cause an assigned judge to be recused, the lawyer will go and the judge will stay.

*Id.* Based on the above, the Second Circuit rejected the appearance of Gibson Dunn for the appeal. *Id.*

Although this case involves the inverse of *FCC*—where counsel appeared before the Court was assigned—the same principle applies. SHB knew or should have known that regardless of whether recusal would have been required, Geisler's prior relationship with the Court created a § 455(a) appearance *issue* once this Court was assigned to the action, and it should have notified the Court and parties of such. Such gamesmanship is precisely what the prophylactic repose period is designed to prevent. By failing to apprise the Court and the parties promptly and candidly after the December 2, 2024 assignment, SHB created the objective appearance of attempting to preserve this Court's continued involvement, rather than allowing the issue to be evaluated contemporaneously, when reassignment "back on the wheel" would have been the simplest and least disruptive course.

II.     WIGGIN AND DANA'S EMPLOYMENT OF AMANDA FARRISH

The Court's February 17 Notice apprised the parties that Amanda Farrish, the daughter of Judge Farrish, would begin employment at Wiggin and Dana LLP ("Wiggin") on February 23, 2026. The Court concluded that this fact did not warrant recusal under Section 455(b) and that Section 455(a) "is not implicated" by this fact. While Plaintiffs do not suggest that Amanda Farrish's employment at Wiggin should serve as a basis for the Court to recuse itself from every case in which Wiggin is involved before the Court, Plaintiffs respectfully disagree with the

8

Court's conclusion that Section 455(a) is not implicated by this circumstance in this case, Plaintiffs believe it contributes to the *cumulative* appearance of partiality, which merits recusal.

Plaintiffs appreciate that Amanda Farrish will not be based in Connecticut, is not a litigator, does not anticipate being involved in this case, and will be employed as a salaried associate attorney which would serve to prevent a direct financial stake in this litigation. But, as SHB's conduct demonstrates, relying on the internal controls of defense counsel has its risks and may result in inequitable outcomes for their adversaries. This is a complex case which has already lasted many years, with likely many years to come. Should Amanda Farrish switch departments or be promoted within Wiggin during the pendency of this litigation such that she gains a direct financial interest in the success of this matter, the Court may be forced to reconsider certain aspects its February 20 Notice and may need to recuse itself *sua sponte* or on Plaintiffs' motion. Thus, Amanda Farrish's employment at Wiggin raises the possibility that a choice between the orderly advancement of this action, or the appearance of partiality may in the future. That possibility, combined with the additional circumstances described herein, favor recusal at this stage.

### III. THE ROLE OF DUPONT AND 3M AMONG DEFENDANTS EXACERBATES THE CONCERNS

The above are amplified by the roles the DuPont Defendants (Attorney Geisler's clients) and 3M (Wiggin and Dana's client) have taken in this case. Counsel for 3M and the DuPont Defendants have taken a leadership role in defending against this action, making scrutiny of any connection to these defendants particularly significant when assessing the potential for an appearance of impropriety. For instance, 3M and Wiggin & Dana LLP oversaw the unsuccessful effort to transfer this case to the *In re Aqueous Film-Forming Foams Products Liability Litigation,* MDL No. 2873 (D.S.C.) pending in South Carolina, a move which would have

9

benefitted all defendants by effectively staying the case. Counsel for 3M and the DuPont Defendants frequently speak on behalf of all defendants at court conferences as well as in meetings with Plaintiffs' counsel. 3M and the DuPont Defendants oversaw much of the briefing for both Motions to Dismiss, with the other defendants signing onto their briefing and incorporating it by reference into supplemental briefing. It is indisputable that counsel for 3M and the DuPont Defendants play an outsize role with respect to strategy and work product in this litigation.

The Court's relationships with attorneys at SHB and Wiggin, are therefore, direct ties to cornerstone defendants and will inevitably place the Court in the position in the course of discovery of repeatedly adjudicating disputes in which these firms and attorneys lead defendants' efforts. To get ahead of any potential incurable conflicts, the Court should resolve any close question in favor of recusal, before further substantive rulings deepen reliance interests and intensify the risk that the legitimacy of those rulings will be questioned on appearance grounds.

IV.   CONCLUSION

For the reasons outlined herein, Plaintiffs respectfully submit that recusal under 28 U.S.C. § 455(a) is warranted and that the matter should be returned for reassignment to another magistrate judge.

DATED: February 23, 2026                                      Respectfully submitted,

SILVER GOLUB & TEITELL LLP

*/s/ Jennifer Sclar*_____
Jennifer Sclar (ct31554)
Ian W. Sloss (ct31244)
Kate Sayed (ct31667)
Samantha Blend (*pro hac vice forthcoming*)
ONE LANDMARK SQUARE, 15th FL.
STAMFORD, CT 06901
Tel. (203) 325-4491

isloss@sgtlaw.com
jsclar@sgtlaw.com
ksayed@sgtlaw.com
sblend@sgtlaw.com


GRANT & EISENHOFFER P.A.

*/s/ Kyle J. McGee*
Kyle J. McGee (*pro hac vice forthcoming*)
Viola Vetter (*pro hac vice forthcoming*)
Jason H. Wilson (*pro hac vice forthcoming*)
Suzanne Sangree (*pro hac vice forthcoming*)
123 S. Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
kmcgee@gelaw.com
vvetter@gelaw.com
jwilson@gelaw.com
ssangree@gelaw.com

Steve W. Berman
Craig R. Spiegel
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Avenue, Suite 2000
Seattle, WA 98101
206-623-7292
Fax: 206-623-0594
craigs@hbsslaw.com
steve@hbsslaw.com


*Attorneys for Plaintiffs*