UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNIFORMED PROFESSIONAL FIRE FIGHTERS ASSOCIATION OF CONNECTICUT, et al.<br><br>Plaintiffs,<br><br>v.<br><br>3M COMPANY (F/K/A MINNESOTA MINING AND MANUFACTURING COMPANY), et al.<br><br><br>Defendants. | <br><br><br><br>Case No.: 3:24-cv-01101-AWT<br><br><br><br><br><br>April 14, 2026 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO CERTIFY**

**INTRODUCTION**

This is a diversity action asserting a Connecticut state law claim pursuant to the Connecticut Product Liability Act ("CPLA"), Conn. Gen. Stat. § 52-572m *et seq.* Plaintiffs, individually and on behalf of a class of similarly situated local fire fighter unions and fire fighters, assert product liability claims against the Defendants in connection with their manufacture and sale of turnout gear that is contaminated with toxic levels of PFAS chemicals. Plaintiffs allege that PFAS bioaccumulates in the body, putting them at increased risk for certain cancers, endocrine dysfunction, and immunosuppression.

On February 19, 2026, Plaintiffs voluntarily dismissed from the present case, the City of Stamford, Old Mystic Fire District and the Old Mystic Fire Department as Plaintiffs, along with four of the five claims. *See* Notice of Voluntary Dismissal (Dkt. No. 360). The sole remaining claim in this action is a product liability claim, for which Plaintiffs seek medical monitoring as the principal remedy. If this Court finds that some or all of the Plaintiffs have standing to pursue

their claims over Defendants' Rule 12(b)(2) standing challenges, the availability of medical monitoring as a remedy will be the single most consequential issue left in this case. Without it, Plaintiffs' ability to seek redress will be drastically diminished – limited to the costs of remedial measures to reduce exposure to PFAS in the fire house such as the development and implementation of more efficient cleaning procedures and protocols, gear lockers, disposal protocols for decommissioned gear, and funding education efforts designed to increase awareness and best practices. These measures, while important, will fail to redress the Fire Fighter Plaintiffs' injuries due to the toxic exposure they have already experienced and will continue to experience as a result of Defendants' defective products.

Because this case presents an unavoidable, unresolved question of state law, the Plaintiffs respectfully request the Court to certify that question to the Connecticut Supreme Court pursuant to Conn. Gen. Stat. § 51-199b. Plaintiffs submit this Memorandum in support of their Motion to Certify.

### BACKGROUND

Medical monitoring is a widely-recognized theory of liability and damages for toxic exposure, which allows plaintiffs to recover the foreseeable costs of diagnostic testing and preventive care. In Connecticut, "whether to permit medical monitoring [damages] in the absence of some present manifestation of a physical injury" remains "an open question of law." *Dougan v. Sikorsky Aircraft Corp.*, 337 Conn. 27, 36 (2020). There are no appellate court decisions that could guide this Court in determining how the Connecticut Supreme Court would rule.

The concept of medical monitoring is a mainstay of toxic exposure cases. When people are exposed to carcinogenic toxins, "significant personal injuries . . . are not detectable

simultaneously upon exposure[,] . . . but rather are latent." A. Slagel, Note, "Medical Surveillance Damages: A Solution to the Inadequate Compensation of Toxic Tort Victims," 63 Ind. L.J. 849, 852 (1987-1988). As a result, "most toxic injuries do not manifest themselves as clinically detectable ailments until years after exposure occurs." *Id.* Medical monitoring "allows a plaintiff to recover the cost of diagnostic testing for an injury that may occur in the future as a result of a defendant's tortious conduct." *Sikorsky*, 337 Conn. at 36; *see also Metro-N. Commuter R. Co. v. Buckley*, 521 U.S. 424, 438 (1997) (defining medical monitoring damages as "the economic cost of the extra medical checkups that [the plaintiff] expects to incur as a result of his exposure to asbestos-laden . . . dust").

State appellate courts are "split on whether to accept or reject plaintiffs' claims that seek medical monitoring." Restatement (Third) of Torts, September 2025 Update, Tentative Draft No. 2 (March 2023). *Medical Monitoring*, § 2_0 TD No 2 (2023) (collecting cases). Connecticut's closest neighbors are also divided on the question. *Compare Donovan v. Philip Morris USA, Inc.*, 455 Mass. 215, 226 (2009) (Massachusetts Supreme Judicial Court recognizing medical monitoring); *with Caronia v. Philip Morris USA, Inc.*, 22 N.Y.3d 439, 452 (2013) (New York Court of Appeals declining to recognize an "independent cause of action for medical monitoring"). Unlike New York and Massachusetts, the Connecticut Supreme Court has never decided whether to recognize medical monitoring, either as a remedy or an independent cause of action. *See Sikorsky*, 337 Conn. 27 at 42.

Here, Plaintiffs brought claims on behalf of municipal purchasers of fire fighter personal protective equipment, as well as fire fighter unions and individual fire fighters. *See generally,* Second Amended Complaint ("SAC") (Dkt. No. 201-1). The Plaintiffs allege that the Defendants manufactured and sold protective equipment contaminated with toxic PFAS

chemicals.  *See* SAC ¶¶ 164-194.  As a result, Plaintiffs allege that PFAS chemicals have accumulated in the blood and tissue of Connecticut fire fighters, putting them at heightened risk for developing cancers and other diseases.  *See id.* ¶¶ 32-43, 375.

As a result of Plaintiffs' voluntary dismissal of the purchaser plaintiffs, Plaintiffs' only remaining claim is brought under the CPLA.  *See* SAC, Fourth Claim for Relief.  The Plaintiffs assert six theories of liability under the CPLA – each of which seeks medical monitoring damages.[1]  *See id.*

The Defendants moved to dismiss under Rules 12(b)(1), 12(b)(2), and 12(b)(6), and their motions remain pending.  Unless the Court finds subject matter jurisdiction entirely lacking, the Court will have to confront the question of whether Plaintiffs may state a claim – or seek damages – for medical monitoring.[2]  Without authority from Connecticut's highest court, this Court has discretion either to "(1) predict how the state's highest court would resolve the . . . question, or, if state law is so uncertain that [the Court] can make no reasonable prediction, (2) certify the question . . .  for a definitive resolution."  *RSD Leasing, Inc. v. Navistar Int'l Corp.*, 81 F.4th 153, 169 (2d Cir. 2023).

Because the Connecticut Supreme Court has recognized that the availability of medical monitoring as a claim or a remedy is an open question, and because medical monitoring is so important to this case, Plaintiffs respectfully request this Court to consider, at its discretion,

---

[1]The SAC pleads "medical monitoring" both as a sub-theory under the CPLA, as well as a form of damages under the other CPLA theories.  *See* SAC, Fourth Claim for Relief.  Plaintiffs take no position on whether medical monitoring is more appropriately described as a theory of relief or cause of action.

[2] Some Defendants also contest personal jurisdiction.  Not every Defendant has done so, however.  Thus, the question of medical monitoring will become necessary even if the Court finds personal jurisdiction lacking with respect to certain Defendants.

4

certifying the question.  Plaintiffs propose certification of the following questions[3] to the

Connecticut Supreme Court:

> 1.    Does the Plaintiffs' request for medical monitoring, based on the subclinical effects of firefighters' heightened exposure to toxic PFAS chemicals from firefighter protective gear, state a cognizable claim and/or permit a remedy under Connecticut state law?
>
> 2.    If Connecticut law recognizes medical monitoring as a claim or remedy, what elements of proof does it require?

## **LEGAL STANDARD**

The Connecticut Supreme Court accepts questions "certified to it by a court of the United

States . . . . if the answer may be determinative of an issue in pending litigation in the certifying

court and if there is no controlling appellate decision, constitutional provision or statute of this

state."  Conn. Gen. Stat. § 51-199b(d).

"Certification is an exercise of . . . discretion."  *Glover v. Bausch & Lomb Inc.*, 6 F.4th

229, 244 (2d Cir. 2021), *certified question answered*, 343 Conn. 513 (2022).  When asked to

decide a question of state law "in the absence of authoritative law from the state's highest court",

the court must either "(1) predict how the state's highest court would resolve the . . . question, or,

if state law is so uncertain that [the Court] can make no reasonable prediction, (2) certify the

question . . .  for a definitive resolution."  *RSD Leasing*, 81 F.4th at 169.

In considering whether to certify a question, courts consider "(1) whether a state court

decision has ever provided an authoritative answer; (2) the extent to which the question

implicates the weighing of policy concerns of particular importance; and (3) if the [State]

---

[3] Plaintiffs modelled these questions on similar questions certified in *Donovan* and *Caronia*, by the District of Massachusetts and Second Circuit, respectively.  *See Donovan v. Philip Morris USA, Inc.*, 455 Mass. 215, 215–16 (2009); *see also Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 450 (2d Cir.), *certified question answered*, 22 N.Y.3d 439, 5 N.E.3d 11 (2013).

Supreme Court's answer may be determinative of the [case]." *Id*. (internal citations and quotations omitted). "Where a question . . . implicates the weighing of policy concerns, principles of comity and federalism strongly support certification." *Parrot v. Guardian Life Ins. Co. of Am.*, 338 F.3d 140, 144 (2d Cir. 2003), *certified question answered*, 273 Conn. 12 (2005).

## DISCUSSION

Plaintiffs respectfully ask this Court to consider certification of the medical monitoring question for three reasons. First, the Connecticut Supreme Court has never answered the question of whether medical monitoring is available, and its answer is difficult to predict. Second, because the answer is necessary to this case, it will conserve judicial and party resources to certify it sooner. Third, whether to recognize subclinical injuries requires careful "weighing of [state] policy concerns," *see Glover*, 6 F.4th at 244, rendering certification especially appropriate.

First, the Connecticut Supreme Court has not decided whether to allow medical monitoring, either as a cause of action or remedy. In 2020, the Connecticut Supreme Court noted that "medical monitoring claims present an issue of first impression in Connecticut." *Sikorsky*, 337 Conn. at 37. Rather than decide whether medical monitoring is available under Connecticut law, however, the Connecticut Supreme Court decided *Sikorsky* on alternate grounds. *See id.* at 29. As a result, the Connecticut Supreme Court has never decided "the central issue of whether to permit medical monitoring in the absence of some present manifestation of a physical injury." *Clinger v. Edgewell Pers. Care Brands, LLC*, No. 3:21-CV-1040 (JAM), 2023 WL 2477499, at *8 (D. Conn. Mar. 13, 2023) (internal quotations and citations omitted). Because "there is no controlling appellate decision" in Connecticut, certification is appropriate. Conn. Gen. Stat. § 51-199b(d).

6

Further, the availability of medical monitoring is not only unsettled, it is difficult to predict how the Connecticut Supreme Court would rule.  In *Sikorsky*, it observed that there is no clear trend in state recognition of medical monitoring.  *See Sikorsky*, 337 Conn. at 38 ("[s]tate appellate courts have been divided ... with respect to whether to permit recovery for medical monitoring...").  Nor is there any clear answer from Connecticut's neighbor states, who are themselves divided on the question.  In Massachusetts, medical monitoring is well-established and has recognized elements of proof.  *See Donovan*, 455 Mass. at 215–16 (2009). By contrast, the New York Court of Appeals, while recognizing "significant policy reasons that favor" medical monitoring, ultimately decided not recognize it.  *Caronia*, 22 N.Y.3d at 451.  *Donovan* and *Caronia* both involved questions certified to them from Federal Courts (the District of Massachusetts and the Second Circuit, respectively).  *See Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 450 (2d Cir.) (certifying the question because of "the lack of controlling precedent of the New York Court of Appeals").  Because medical monitoring here presents the same unpredictable question of state law, the Plaintiffs respectfully request this Court to consider following  the Second Circuit's example and to certify the question in Connecticut.

Second, the availability of medical monitoring is "determinative of an issue" in this case. Conn. Gen. Stat. § 51-199b(d).  Unless this Court finds subject matter jurisdiction entirely lacking, it will have to decide, under Connecticut law, whether the Plaintiffs are entitled to damages for medical monitoring.  Rather than certify the question at summary judgment or class certification, after years of expensive discovery and motion practice, it is more expedient for the Court and the parties to do so at the current stage.

Finally, the determination of whether to allow medical monitoring requires "value judgments and important policy considerations" in areas that are traditionally left to the states.

7

*Caronia*, 715 F.3d 417, 450 (2d Cir.); *see also Glover*, 6 F.4th at 244 (certification requires consideration of "the extent to which the question implicates the weighing of policy concerns of particular importance").  The U.S. Supreme Court, in deciding whether to recognize medical monitoring under a Federal Statute, observed that "state-court decisions that permit asymptomatic plaintiffs a separate tort claim for medical monitoring costs" involve a "mix of competing general policy considerations".  *Metro-N. Commuter R. Co. v. Buckley*, 521 U.S. 424, 444 (1997).  These interests include "an important public health interest in fostering access to medical testing for individuals whose exposure to toxic chemicals creates an enhanced risk of disease, particularly in light of the value of early diagnosis and treatment for many cancer patients."  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1008 (1993).  Courts have weighed those public health interests against the uncertainty of "whether asymptomatic plaintiffs will ever contract a disease", and "the potential for vast, uncircumscribed liability."  *Caronia*, 22 N.Y.3d 439, 450 (2013).  Whether to allow medical monitoring deals with the intersection of two traditional state interests: public health and the scope of state tort law.  *See IMS Health Inc. v. Sorrell*, 630 F.3d 263, 277 (2d Cir. 2010) (recognizing "the state's interests in public health").  Thus, Plaintiffs respectfully submit that the Connecticut Supreme Court is in the best position to weigh these state interests.

In sum, because medical monitoring (1) presents a difficult and unsettled question of state law, which is (2) necessary to this case, and (3) involves a "mix of competing [state] policy considerations", *Buckley*, 521 U.S. at 444, the Plaintiffs respectfully ask this Court to consider certifying the question to the Connecticut Supreme Court.

**CONCLUSION**

For these reasons, the Court should grant the Plaintiffs' Motion to Certify the following questions to the Connecticut Supreme Court:

1.  Does the Plaintiffs' request for medical monitoring, based on the subclinical effects of firefighters' heightened exposure to toxic PFAS chemicals from firefighter protective gear, state a cognizable claim and/or permit a remedy under Connecticut state law?

2.  If Connecticut law recognizes medical monitoring as a claim or remedy, what elements of proof does it require?

DATED:  April 14, 2026                                 Respectfully submitted,

                                                    /s/ Jennifer Sclar_____
                                                    Ian W. Sloss (ct31244)
                                                    Jennifer Sclar (ct31554)
                                                    Kate Sayed (ct31667)
                                                    Samantha Blend (ct31936)
                                                    SILVER GOLUB & TEITELL LLP
                                                    One Landmark Sq., 15th Floor.
                                                    Stamford, CT 06901
                                                    Tel. (203) 325-4491
                                                    isloss@sgtlaw.com
                                                    jsclar@sgtlaw.com
                                                    ksayed@sgtlaw.com
                                                    sblend@sgtlaw.com

                                                    Kyle J. McGee (ct208781)
                                                    Jason H. Wilson (*pro hac vice*)
                                                    Suzanne Sangree (*pro hac vice*)
                                                    GRANT & EISENHOFFER P.A.
                                                    123 S. Justison Street
                                                    Wilmington, DE 19801
                                                    Tel: (302) 622-7000
                                                    kmcgee@gelaw.com
                                                    vvetter@gelaw.com
                                                    jwilson@gelaw.com
                                                    ssangree@gelaw.com

                                                    Steve W. Berman (*pro hac vice*)
                                                    Craig R. Spiegel (*pro hac vice*)

9

HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Avenue, Suite 2000
Seattle, WA  98101
206-623-7292
Fax:  206-623-0594
craigs@hbsslaw.com
steve@hbsslaw.com

*Attorneys for Plaintiffs*